419 A.2d 1316

**In the Interest of Robert WOOD, a minor.**

**Appeal of Robert WOOD, a minor.**

Superior Court of Pennsylvania.

Argued June 6, 1979.

Filed May 16, 1980.

Bruce K. Doman, Assistant Public Defender, Doylestown, for appellant.

John J. Kevlock, Doylestown, for appellee.

Before PRICE, GATES and DOWLING, JJ.*

PRICE, Judge:

On December 19, 1978, appellant was adjudicated delinquent upon a petition alleging burglary,[1] theft,[2] and unauthorized operation of a motor vehicle.[3]  Pursuant to this

---

* President Judge G. THOMAS GATES of the Court of Common Pleas of Lebanon County, Pennsylvania, and Judge JOHN C. DOWLING of the Court of Common Pleas of Dauphin County, Pennsylvania, are sitting by designation.

1.  18 Pa.C.S. § 3502.

2.  18 Pa.C.S. § 3921.

3.  18 Pa.C.S. § 3928.

finding, he was committed to the Youth Development Center in New Castle, Pennsylvania. Appellant takes this appeal claiming that the evidence was insufficient to support the finding that he had committed a crime. We agree and reverse the order.

■ In reviewing the sufficiency of evidence to support a delinquency adjudication, we are well aware that the due process safeguards of the fourteenth amendment of the United States Constitution are applicable and that the evidence must meet the standard of proving each element of the crime beyond a reasonable doubt. *Commonwealth v. Durham*, 255 Pa.Super. 539, 389 A.2d 108 (1978); *In the interest of DelSignore*, 249 Pa.Super. 149, 375 A.2d 803 (1977). Viewing the entire record in the light most favorable to appellee, as we must, we note that the only testimony presented was that of appellant's father, Loring Wood. He testified that on the evening of November 4, 1978, he left both his house keys and car keys on top of the television and went to bed. Appellant, who was living in the house at the time, was not yet home. At about 2:30 a. m., Mr. Wood was awakened by the police who came to inform him that his automobile had been involved in an accident. He discovered that his keys were missing from atop the television set, and they were not present in the car when he arrived at the scene of the accident. Mr. Wood found no signs of forced entry into the house. His wife and two sons [4] were in the house that evening and were the only ones with access by key. Appellant was not seen again at the house after this incident.

Mr. Loring further testified that on November 7, 1978, he arose and discovered that the door was unlocked and that someone had let the dog outside. He discovered that canned goods, meat, and other food, valued at a total of about $200,

4. We assume the reference to two sons being in the house that evening does not include appellant. The record is not clear. (N.T. 8).

had been removed. Once again, no forced entry was evident. Mr. Loring stated that the dog would bark at and bite anyone who came into the house after dark unless he was accompanied by someone from the family. He also testified that although any barking of the dog would be audible in his bedroom, he was not awakened that evening by any noise.

■ Initially, we note that the Commonwealth admits its own difficulty in contending that a burglary was committed in light of the testimony that appellant resided in the house up until the time of these events. The statute itself expressly provides that one entering a building with the proper intent will be guilty of burglary "unless the premises are at the time open to the public or the actor is licensed or privileged to enter." 18 Pa.C.S. § 3502. We find ourselves governed by this language and an adjudication of delinquency cannot be founded on this basis.

■ The evidence offered to prove commission of the other two crimes consists primarily of facts showing opportunity to commit the offenses. The testimony shows that appellant would have been able to enter the house without force, and without the dog creating a disturbance, and remove the keys. The Commonwealth claims that this evidence, coupled with an indication of flight by the failure subsequently to return home, provides a sufficient inference of guilt to meet the standard of proof beyond a reasonable doubt. We disagree.

In *Commonwealth v. Roach,* 260 Pa.Super. 261, 393 A.2d 1253 (1978), this court recently examined the sufficiency of certain circumstantial evidence that was offered to prove theft by unlawful disposition. In that case, the police discovered the defendant, who was estranged from her husband, removing possessions that she claimed were jointly owned, from a house partly owned by her husband. The police apparently credited her story and left her to her task. When her husband returned five days later, he discovered

his gun rack missing and several broken windows that had been mended with cardboard and tape. He filed a private criminal complaint charging the defendant with burglary and theft. The trial judge inferred that the gun rack was among the property she had been seen removing and convicted her. This court, however, reversed the conviction because the policeman had been unable to say that the gun rack was among the articles he saw her removing and the Commonwealth had presented no other evidence to show that she had taken it or had ever had it. In *Commonwealth v. Bailey*, 250 Pa.Super. 402, 378 A.2d 998 (1977), we similarly reversed a conviction for theft by unlawful disposition because of the Commonwealth's failure to show any "link" between the defendant and the removal of the stolen goods, and we commented on the lack of evidence placing the defendant near the scene of the crime or showing possession of the goods within a short time of the theft.

Like these two cases, the evidence in the instant case establishes, at best, a very weak link between appellant and the removal of the keys. It is particularly like *Commonwealth v. Roach, supra*, because guilt is premised on the inference that because appellant had the opportunity to do so, he is the one who removed the keys. Again like *Roach*, there was no evidence that he was ever in possession of the keys, the car, or the food. The evidence is, in fact, more tenuous since his presence at the house at the time the keys disappeared has also not been established with any certainty. Appellant was never seen at the house that evening, and the only evidence of his return arose by inference from Mr. Wood's failure to hear the dog bark. It is a reasonable possibility that the dog was silenced or muzzled in some manner to allow an intruder to enter the house. Furthermore, although the Commonwealth contends that no one else could have entered the house without the dog barking, Mr. Wood's testimony was not so conclusive. He stated that the dog would not bark at members of the family or those accompanying them. It is entirely conceivable that even if

appellant returned to the house, he may have been accompanied by someone who could have easily picked up the keys which were in plain view.

The added element of appellant's failure subsequently to return home, without more, does not change the conjectural nature of the Commonwealth's proof. Even assuming that this was evidence of flight[5] and further assuming that appellant had been home that evening, mere presence at the scene and flight are not enough to establish guilt beyond a reasonable doubt. *Commonwealth v. Goodman*, 465 Pa. 367, 350 A.2d 810 (1976); *Commonwealth v. Roach, supra; Commonwealth v. Keller*, 249 Pa.Super. 384, 378 A.2d 347 (1977).

From the accumulation of this evidence, it "is a *possible* inference [that appellant committed these acts], but not *so* possible as to permit a finding beyond a reasonable doubt . . . ." *Commonwealth v. Roach, supra*, 260 Pa.Super. at 265, 393 A.2d at 1255–56. Circumstantial evidence alone may be sufficient to support the delinquency adjudication, but the finding must be based on more than just suspicion or conjecture. *Commonwealth v. Keller, supra; Commonwealth v. Cichy*, 227 Pa.Super. 480, 323 A.2d 817 (1974). We find the Commonwealth has not sufficiently proven the inference that appellant was responsible for taking the keys and since his connection with the unauthorized use of the motor vehicle and disappearance of the food arose entirely from that conclusion, these charges may not stand as grounds for an adjudication of delinquency.[6]

The order of the court of common pleas is reversed.

**5.** We have not been presented with any evidence to indicate where appellant was during this time or what his reasons were for failing to return to the home.

**6.** We note the trial judge's reference by opinion (slip opn. at 4) to appellant's failure to comply with Pa.R.A.P.1925(b). The record does not support this statement and reflects that appellant filed the required statement on January 16, 1979, in response to the directive filed December 21, 1978. Failure to comply with Pa.R.A.P. 1925(b) results in a waiver of the issues sought to be raised on appeal.