445 A.2d 804

**COMMONWEALTH of Pennsylvania**

v.

**Carol PAYNE, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 2, 1981.

Filed May 14, 1982.

Jeffery M. Cook, Assistant Public Defender, Harrisburg, for appellants.

William A. Behe, Deputy District Attorney, Harrisburg, for Commonwealth, appellee.

Before BROSKY, WIEAND and MONTEMURO, JJ.

WIEAND, Judge:

Carol Payne was tried nonjury and convicted of theft by unlawful taking.[1] On direct appeal, after post trial motions were denied and sentence imposed, she argues that the evidence was insufficient to support the conviction. We disagree and affirm the judgment of sentence.

■ In determining the sufficiency of the evidence, we must view the evidence in the light most favorable to the Commonwealth as verdict winner, accept as true all the evidence and all reasonable inferences upon which, if believed, the fact finder could properly have based the verdict, and then determine whether such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt. *Commonwealth v. Stockard*, 489 Pa. 209, 212–213, 413 A.2d 1088, 1090 (1980); *Commonwealth v. Tate*, 485 Pa.

1. 18 Pa.C.S. § 3921.

180, 182, 401 A.2d 353, 354 (1979); *Commonwealth v. Johnson*, 273 Pa.Super. 14, 17, 416 A.2d 1065, 1067 (1979). The Commonwealth is not required to prove guilt to a mathematical certainty and may in a proper case rely wholly on circumstantial evidence; but guilt must be proven and may not rest upon mere suspicion and surmise. *Commonwealth v. Roscioli*, 454 Pa. 59, 62, 309 A.2d 396, 398 (1973); *Commonwealth v. Reed*, 276 Pa.Super. 467, 469, 419 A.2d 552, 553–554 (1980); *Commonwealth v. Cichy*, 227 Pa.Super. 480, 482–483, 323 A.2d 817, 818 (1974). It must be remembered, moreover, that it is the province of the trier of the facts to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. The fact finder is free to believe all, part or none of the evidence. *Commonwealth v. Stockard, supra; Commonwealth v. Tate, supra; Commonwealth v. Hinchcliffe*, 479 Pa. 551, 556, 388 A.2d 1068, 1071, *cert. denied* 439 U.S. 989, 99 S.Ct. 588, 58 L.Ed.2d 663 (1978); *Commonwealth v. Yost*, 478 Pa. 327, 332, 386 A.2d 956, 959 (1978); *Commonwealth v. Rose*, 463 Pa. 264, 268, 344 A.2d 824, 826 (1975).

When viewed in the light most favorable to the Commonwealth, the evidence establishes the following fact pattern. On the evening of June 18, 1980, appellant encountered Juan Martinez in a Harrisburg tavern. Appellant explained that she had been experiencing difficulty with her landlord and needed a new place to live. Martinez, who had been an acquaintance of appellant for almost fifteen years, invited appellant to stay at his apartment. The invitation was accepted, and the same night appellant went with Martinez to the latter's apartment. There appellant was shown the apartment and, specifically, the cameras and photographic equipment which appellant kept in a closet of his bedroom.

Upon awakening the following morning, Martinez observed that appellant was still sleeping and left the apartment without waking her. When he did so, he locked the doors to the apartment and took the only keys with him. Appellant had no keys; and no one else had keys. When Martinez returned later on the same day the doors were still

locked. Appellant, however, was gone, and so were cameras and photographic equipment having an estimated value of $1,500. There had been no forcible entry made to the apartment. That evening, without any communication with Martinez, appellant returned to and resumed occupancy of her own quarters.

Appellant testified on her own behalf. Her testimony precluded the possibility that a third person had entered the apartment at her invitation while Martinez was absent. She said that she had slept until after noon, when she decided to return to her own apartment. Upon departing the Martinez apartment, she said, she left the doors unlocked. However, the trial judge, as trier of the facts, did not believe this testimony. On the contrary, he expressly rejected it on the grounds that it was not credible. He also rejected appellant's contention that another, unidentified person might have entered the apartment and removed the cameras and equipment after appellant had returned to her own apartment.

The evidence found credible by the trial judge, although circumstantial, was sufficient to prove appellant's guilt beyond a reasonable doubt. It was not proof merely of presence, as appellant contends, but proof of circumstances which eliminated all persons other than appellant as the possible thief. She and she alone, according to the Commonwealth's evidence, was inside the apartment, had access to the photographic equipment and an opportunity to remove the same. No one else could have entered the apartment without forcibly breaking into it, and this, according to the evidence, did not occur.

The decision in *Interest of Wood*, 277 Pa.Super. 606, 419 A.2d 1316 (1980), is not apposite. In that case, the Commonwealth showed only "opportunity" for the juvenile to take keys to his father's car. This was held insufficient to show that the juvenile was the thief, because the circumstantial evidence did not eliminate the possibility that the keys had been taken by another. *See also and compare: Commonwealth v. Roach*, 260 Pa.Super. 261, 393 A.2d 1253 (1978). In the instant case, however, the possibility that another may

have taken the photographic equipment was eliminated by the evidence. The only person other than the owner who had access to and an opportunity to take the cameras and equipment was appellant.

From the credible evidence accepted by the trial judge, the only logical inference to be drawn was that appellant took the equipment. As such, she was properly found guilty of theft by unlawful taking.

The judgment of sentence is affirmed.

BROSKY, J., files a dissenting opinion.

BROSKY, Judge, dissenting:

I dissent.

We said in *In Re Amos*, 287 Pa.Super. 446, 449, 430 A.2d 688, 689–690 (1981):

> In determining on appeal whether evidence is sufficient to sustain a criminal conviction, we view the evidence, and all inferences reasonably drawn therefrom, in the light most favorable to the Commonwealth as verdict winner. *Commonwealth v. Horne*, 479 Pa. 496, 388 A.2d 1040 (1978). Speculation and conjecture, however, will not support a conviction. *Commonwealth v. Turner*, 270 Pa. Super. 58, 61, 410 A.2d 895, 897 (1979); *Commonwealth v. Holguin*, 254 Pa.Super. 295, 385 A.2d 1346 (1978); *Commonwealth v. Navarro*, 251 Pa.Super. 125, 380 A.2d 409 (1977).

See also *Commonwealth v. Wiley*, 288 Pa.Super. 397, 432 A.2d 220 (1981).

The evidence in the instant case so viewed reveals that on the evening of June 18, 1980, Juan Martinez, who had known Payne for some time, encountered Payne. She explained to him that she had experienced some difficulty with her landlord which necessitated her residing at a new location. Martinez offered to share his apartment with her for the night and indicated he might be able to rent a room in his apartment to her. At his apartment, he provided her a tour. Payne conducted another tour of the premises sometime later that evening.

Martinez possessed and housed in his apartment photographic equipment. The record discloses that Payne was shown the equipment in her guided tour and observed it somewhat later in her supplemental tour. Sometime later, Martinez and Payne each retired.

The following morning, Martinez awoke and prepared to leave for work around 6 a. m. Before leaving, he attempted to awaken Payne. She did not respond. Martinez left for work, locking two doors behind him and taking the only set of keys with him. That evening, Martinez returned home to find the door locked, no evidence of a forced entry, Payne gone, and his photographic equipment missing. The equipment was valued at an amount over $1,000.

Payne stated that she left the apartment at about 1 p. m. to go to her apartment to eat and change her clothing. She stated that when she left Martinez's apartment she left the doors unlocked. Payne did not return to Martinez's apartment that evening.

On June 20, 1980, Martinez sought out and confronted Payne. He accused her of taking his photographic equipment and told her he would give her a week to return it or he would press charges. Payne responded, according to Martinez's testimony, that he could do what he wanted. The record discloses that Payne described this incident in the following manner:

Q. When was the next time you saw Mr. Martinez?

A. I believe it was that same evening.

Q. What did you tell him?

A. I spoke to him and he said, "You have a lot of nerve," and he started yelling at me about some stuff that was missing out of his place. And at first I started laughing but then he was getting ridiculous with it and started calling me names and stuff and I told him I got tired of it and I told him I didn't care what he did, what he had to say, I didn't take anything out of his place, I just left and that was it.

Payne was arrested and charged with the theft of Martinez's photographic equipment on July 24, 1980. No equip-

ment was found in her possession. No eyewitness to the crime was produced at trial.

In *Commonwealth v. Smith*, 490 Pa. 374, 377, 416 A.2d 517, 518 (1980), our Supreme Court said:

> We agree that mere presence at the scene of the crime, standing alone, does not establish complicity. *Commonwealth v. Goodman*, 465 Pa. 367, 350 A.2d 810 (1976); *Commonwealth v. Roscioli*, 454 Pa. 59, 309 A.2d 396 (1973); *Commonwealth v. Garrett*, 423 Pa. 8, 222 A.2d 902 (1966). What does satisfy the quantum of proof necessary to convict is the combination of factors present pointing to appellant's active participation in this crime.

The evidence in *Commonwealth v. Smith*, supra, incriminated Smith because his car was used in the crime. From this fact, his presence was inferred. Additionally, the record disclosed that Smith had no awareness of the fact that the car was taken. There was no evidence that the car was started without an ignition key. Furthermore, the car was returned to Smith and parked in the identical parking space from which it was allegedly taken. And, finally, Smith sold the car the day after the crime had taken place and insisted upon receiving new registration plates. See also: *In Re: Amos*, supra, (only evidence connecting appellant to the crime was standing at a corner a short distance from the perpetration of the crime); *Commonwealth v. Beauford*, 286 Pa.Super. 297, 428 A.2d 1000 (1981), (mere presence at scene of crime plus fleeing from scene presented the court insufficient evidence.)

The critical facts in this case which supplied the court with evidence other than Payne's presence at the crime are:

1. Payne did not return to the apartment on June 19, 1980, though she had claimed that she was unable to use her apartment the previous night because of problems with her landlord.

2. When Martinez confronted Payne and demanded his photographic equipment be returned Payne told Martinez he could do whatever he wanted to do.

3.  That Martinez left his apartment at 6:00 a. m., with the photographic equipment stored therein and that he returned between 7:30 and 8:30 p. m. and the equipment was gone.

4.  The fact that Payne did not wake in the morning when Martinez attempted to do so.

5.  When Martinez returned to the apartment and there was no evidence of a break in.

I am satisfied that Payne could have remained at her apartment on the night of June 19, 1980. While the record does not indicate clearly what the nature of the dispute she had with her landlord, there is testimony to the effect that she expected to be evicted within a short time after June 19, 1980. However, there is no evidence indicating why she was to be evicted. I am unable to determine whether the reason for Payne's desire not to stay at her apartment on the 19th of June was because of some irreconcilable difference with her landlord or whether the dispute was a purely ephemeral one arising shortly before her possible eviction, or still whether Payne was simply upset about her apartment situation and desired to stay at Martinez's apartment that evening for that reason alone and for that night only. While there is evidence that she and Martinez discussed her renting a room from him there is no indication that they had resolved that question in their minds or that if they had that Payne would have necessarily spent the night of the 19th of June at Martinez's apartment. Payne testified that she did not return to Martinez's apartment on that evening because she had guests who arrived at her apartment some time after she had eaten and bathed. This evidence is consistent with the explanation she gave for leaving Martinez's apartment on the afternoon of the 18th of June. Thus, the act of staying at her apartment on the 19th of June was consistent with her innocence.

Payne's reaction to Martinez's confrontation with her about the equipment clearly was not inconsistent with her innocence Martinez testified that she said that he could do whatever he wanted. Payne stated that she had told Mar-

tinez he could do whatever he wanted after telling him that his claims were ridiculous and that she hadn't taken the equipment. I find this evidence ambiguous at best. Furthermore, I do not find that the lapse in time of thirteen and one-half or fourteen and one-half hours from the time Martinez left his apartment and returned was indicative of Payne's guilt. I am also unable to find that the apparent fact that Payne is a very sound sleeper was relevant to her guilt or innocence. Clearly, had Martinez succeeded in waking Payne he would have said goodbye to her or some other such conversation from which I would be unable to find any evidence probative of her guilt. Similarly, I do not find the evidence concerning the locked or unlocked doors persuasive.

Martinez testified when he left his apartment for work on June 18, 1980, he locked two doors, one entering his apartment building and the one entering his apartment. He stated he alone had keys to the doors. Payne testified that she departed from apartment at 1 p. m. She said she left the doors unlocked and did not return. Martinez stated that when he returned to the apartment the doors were locked. Payne posed the theory that whoever stole the photographic equipment entered the apartment through the unlocked doors, took the equipment and then exited, locking the doors behind him.

I am unable to determine from the record precisely what types of locks were placed on the doors entering Martinez's apartment building and his apartment. Clearly, the locks were not the sort that require a key to lock or unlock. If that were the case, Payne would have had no manner to exit the building if the doors were locked when Martinez left for work. The locks were not of a kind that could be opened without a key from the inside but only locked with a key from the outside. If this were the case, then the door to the apartment would not have been locked when Martinez returned home. The record does not disclose whether there were other apartments in this building. If there were, a person living in one of those apartments could have left the building and locked the door behind him. Then again, the doors could have been the kind which can be locked from the

outside and yet be opened from the inside. Such locks often operate in a fashion such that the door if closed will lock behind the person who opened it. In this case, Payne could have left the apartment and building thinking the doors were locked when they had actually locked behind her. It is also possible, though unlikely, that the doors were unlocked by Payne and a person entered the apartment and locked the doors as he left the apartment. My difficulty is that the record contains no evidence which would indicate how the locks operated on the doors in the building or apartment. Payne states that she left both doors unlocked. This evidence is not inconsistent with a finding of her innocence depending upon the types of locks present on the doors.

Accordingly, while I recognize that our scope of review is limited, *Commonwealth v. Robson*, 461 Pa. 615, 337 A.2d 573 (1975), I would reverse the judgment of sentence of the trial court. I am unable to determine from the evidence of record that the trial court was able to hold that Payne's guilt was proven beyond a reasonable doubt absent conjecture or speculation.[2]

**2.** I note that the notes of testimony in the instant case total 17 pages. The only evidence presented was that of Martinez, Payne and a police officer. There is no discussion at any point in the record concerning the nature of the locks on the doors of the apartment or building. It is also difficult to determine the nature of the building in which Martinez lived.