416 A.2d 1065

## COMMONWEALTH of Pennsylvania

v.

## Tyrone E. JOHNSON, Appellant.

Superior Court of Pennsylvania.

Submitted July 23, 1979.

Filed Dec. 14, 1979.

16

Lewis S. Small, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Chief, Appeals Division, Philadelphia, for Commonwealth, appellee.

Before MONTGOMERY, O'BRIEN and HONEYMAN, JJ.*

HONEYMAN, Judge:

Appellant was convicted by verdict of a jury of murder in the first degree and conspiracy in connection with the shooting death of a rival gang member. Post verdict motions were denied, and on March 14, 1977 appellant was sentenced to life imprisonment for the murder and a concurrent term of five years to ten years on the conspiracy. From these judgments of sentence he has appealed.

■ His first contention is that the evidence was insufficient to support the verdicts. We must review the record in a light most favorable to the Commonwealth and accept as true all the evidence of the Commonwealth and all reasonable inferences flowing therefrom, and then determine whether such is sufficient in law to prove beyond a reasonable doubt that appellant is guilty of the crimes for which he stands convicted. See *Com. v. Holmes*, 482 Pa. 97, 393 A.2d 397 (1978); *Com. v. Sullivan*, 472 Pa. 129, 371 A.2d 468 (1977).

■ On September 1, 1975 appellant, then aged 19 years, participated in a plan with other members of his gang, the Mongo Nation, to intrude upon the turf of a rival gang, the Zip Gang. The purpose for such incursion was to incite

* Justice Henry X. O'Brien of the Supreme Court of Pennsylvania and Judge Robert W. Honeyman of the Court of Common Pleas of Montgomery County, Pennsylvania, are sitting by designation.

pursuit by the Zip Gang and lure them into an ambush. Rudolph Edwards was one of the members of the Zip Gang that was lured into the waiting ambush, wherein he was killed by a rifle shot. Appellant did not do the actual shooting, but he stood beside the rifleman, a member of the Mongo Nation, who fired 17 or 18 shots at the members of the Zip Gang. The appellant had supplied funds for and had made arrangements for the purchase of the rifle ten days before the killing. The rifle had been procured following, and in response to, a prior attack upon a member of the Mongo Nation by a member or members of the Zip Gang. The members of the Mongo Nation who participated in the fray, including appellant, all returned to the rifleman's home after the melee, where appellant smilingly said " . . . it was like a holiday out there."

From the foregoing factual summary from the evidence, it is abundantly clear that appellant was a co-conspirator with the slayer and thus equally criminally responsible for the killing. See *Com. v. Mobley*, 467 Pa. 460, 359 A.2d 367 (1976).

Next appellant accuses the Assistant District Attorney of engaging in prosecutorial misconduct in four regards. We will address ourselves to each of these in turn.

First he accuses the prosecutor of "harassment" by requesting in camera hearings to determine whether appellant's witnesses had violated the trial judge's previous sequestration order. At the conclusion of such hearings, the trial judge did not utilize any punitive measures, but simply augmented his instructions to all the witnesses. The selection of a remedy for the violation of the sequestration order is in the sound discretion of the trial judge and will not be disturbed absent an abuse thereof. See *Com. v. Smith*, 464 Pa. 314, 346 A.2d 757 (1975). We see no impropriety in either the requests for the hearings by the prosecutor, or the actions taken by the trial judge.

The second item concerns the testimony of a Commonwealth witness named Jenkins when he was recalled by

appellant's counsel for further cross-examination after the Commonwealth had closed its case. The witness made reference to his having been tested on the polygraph. Generally, a party is not entitled to have stricken incompetent evidence which he elicits. See *Com. v. McDuffie*, 476 Pa. 321, 382 A.2d 1191 (1978). There is no indication that the prosecutor exploited this information in any way. Furthermore, the line of cases that prohibits references to polygraph examinations are those which concern such references that pertain to the accused, particularly where they could give rise to inferences of guilt or innocence of the accused, such as in *Com. v. Garland*, 475 Pa. 389, 380 A.2d 777 (1977) and *Com. v. Camm*, 443 Pa. 253, 277 A.2d 325 (1971). These certainly are inapplicable herein.

■ Thirdly, appellant says reversible error was committed when the prosecutor elicited from Police Officer Brown testimony concerning gang activities in the area where this crime was committed. Some of Officer Brown's testimony was irrelevant, but any harm flowing therefrom was more than adequately cured by cautionary instructions of the trial judge, wherein he said

"There was only one part of the testimony which I think I referred to during the trial and that was the testimony which I will comment on at this point, the testimony of the first witness, Police Officer Brown—the testimony that applies to this case is the fact that he was the second officer to arrive at the scene of the shooting and that he assisted in placing the body of Rudolph Edwards on a stretcher and he helped to carry the stretcher, I believe, to the emergency wagon and that is the part of the testimony which applies to this case.

There was other testimony in there showing a map of the area that he knew well for the past thirteen years. That is not part of this case. We do not include background material and if you want to know what he did in the last thirteen years, it may be that he will publish his memoirs some day in the Daily News and then we'll all know.

20

But it has nothing to do with this case. So, I want you to rule out any other testimony that he testified to or anything about high crime area or anything like that. And just limit the testimony of Officer Brown to being the second officer on the scene, helping to put the body on the stretcher and move it to the police wagon."

See *Com. v. Martinolich*, 456 Pa. 136, 318 A.2d 680 (1974).

█ Fourthly, appellant accuses the Assistant District Attorney of prosecutorial misconduct in uttering the following in her summation:

"MISS CHRISTIE: Yet, despite the evidence in this case, your power is so great that you could find the defendant guilty merely of murder in the third degree. Your power is so great you can find the defendant guilty of voluntary manslaughter even though you will hear that the law requires for voluntary manslaughter that the killing be provoked and be provoked by the victim himself and that that provocation be enough to excite passion in a reasonable man.

Now, you apply that to the evidence in this case and what did Rudolph Edwards do to provoke a bullet in the head? . . ."

The courts of this Commonwealth have repeatedly said that comments by a prosecutor do not constitute reversible error unless the unavoidable effect thereof would be to prejudice the jury, causing them to form in their minds a fixed bias or hostility toward the accused that would prevent them from objectively weighing the evidence and rendering a true and fair verdict. See *Com. v. Baker*, 466 Pa. 382, 353 A.2d 406 (1976) and *Com. v. McNeal*, 456 Pa. 394, 319 A.2d 669 (1974). Frankly, we see nothing improper in this argument by the Assistant District Attorney to the jury. Certainly, she was entitled to seek to dissuade them from rendering a verdict of only voluntary manslaughter.

█ Appellant alleges error in the trial judge's instructions concerning voluntary manslaughter and the manner in which the jury should consider accomplice testimony. As to the former, the instructions were clearly bottomed on Sec-

tion 2503 of the Crimes Code. Stress is particularly made upon the allegedly inadequate instruction on "unreasonable belief." This is of no genuine concern, because under nobody's version of the facts could such an issue have arisen. With respect to the accomplice charge, appellant contends that the trial judge should have given the classic "corrupt source" charge as most recently enunciated in *Com. v. Vorhauer*, 232 Pa.Super. 84, 331 A.2d 815 (1974). That charge pertains only to the *uncorroborated* testimony of an accomplice. Here, in addition to the Commonwealth calling two accomplices as witnesses, the prosecutor also called Mr. Jenkins and put into evidence the statements elicited from the appellant. In many regards, the testimony of the accomplices corroborated each other, and the testimony of Jenkins and the statements of the appellant were further corroborative of the accomplices' testimony. Therefore, although the cautionary instructions by the trial judge concerning the testimony of accomplices was not as strong and encompassing as in *Vorhauer*, it was adequate under the circumstances.

Finally, appellant challenges the failure of the suppression hearing judge to suppress the statements obtained from him. This issue was not raised in the post trial motions, nor was it briefed in support thereof. The trial court's opinion makes no references thereto, therefore it has been waived. See *Com. v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975) and *Com. v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974). In any event, we see no reason to disturb the finding of the suppression court that the appellant was not subjected to abuse by the police in order to render his statements involuntary. See *Com. v. Willis*, 483 Pa. 21, 394 A.2d 519 (1978). Furthermore, the appellant was an adult, and he commenced his first inculpatory statement only one hour after he was brought to the police station. This case is not covered by the six hour rule of *Com. v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1978), and so would be covered by the three-pronged test in *Com. v. Williams*, 455 Pa. 569, 319 A.2d 419 (1974). Although the record is unclear as to when

appellant was arraigned, even if there were an unnecessary delay therein, it could hardly bear any relationship to the obtaining of a statement within one hour. The final assertion for inadmissibility is that the police exploited the relationship of appellant and his mother. The suppression court found otherwise and that *Com. v. Bordner*, 432 Pa. 405, 247 A.2d 612 (1968) was inapposite. We agree. In *Bordner* the accused was 17, both his mother and father were utilized as the agents or instrumentalities of the police when the latter set up confrontations between the parents and the accused in the hospital, the statements thereunder were not spontaneous and were utilized as springboards for further interrogation. Herein, the appellant was 19 and the police permitted his mother to speak with him approximately two hours after his written statement had been completed. She was informed by the police that he was being criminally charged because he had supplied the weapon used in the homicide. The mother then asked the appellant questions about it within the hearing of a police officer. We see nothing unlawful or improper about the use of his utterances under those circumstances as evidence against him, and we fail to see any basis for the contention of appellant that the police exploited the relationship between the appellant and his mother.

Judgment of sentence affirmed.