464 A.2d 375

**COMMONWEALTH of Pennsylvania**

v.

**William FIELDS, Appellant.**

**COMMONWEALTH of Pennsylvania**

v.

**Charles FIELDS, Appellant.**

Superior Court of Pennsylvania.

Argued Feb. 4, 1983.

Filed July 29, 1983.

388

Rhonda Lee Daniele, Norristown, for appellant (at No. 3274).

Barry M. Miller, Norristown, for appellant (at No. 3070).

Joseph A. Smyth, District Attorney, Norristown, submitted a brief on behalf of Commonwealth, appellee.

Before WIEAND, McEWEN and MONTGOMERY, JJ.

WIEAND, Judge:

William Fields and Charles Fields are brothers. They were tried together by a jury which found them guilty of third degree murder,[1] recklessly endangering another person,[2] and criminal conspiracy[3] as a result of the shooting death of Vincent Esposito outside Esposito's Norristown home on July 20, 1980. Post verdict motions were denied, and sentences of imprisonment were imposed.[4] On direct

---

1. 18 Pa.C.S. § 2502(c).

2. 18 Pa.C.S. § 2705.

3. 18 Pa.C.S. § 903.

4. For sentencing purposes, the conviction of recklessly endangering was held to merge in the conviction for murder of the third degree.

appeal, both defendants have alleged insufficiency of the evidence and numerous trial errors which we consider seriatim.

"The test to be applied in determining the sufficiency of evidence to sustain a conviction is whether, accepting as true all the evidence and all reasonable inferences arising therefrom upon which, if believed, the trier of fact could properly have based its verdict, it is sufficient to prove beyond a reasonable doubt that the accused is guilty of the crime or crimes with which he has been charged. As with all challenges to the sufficiency of the evidence, the evidence must be viewed in the light most favorable to the verdict winner, in this case the Commonwealth. *Commonwealth v. Waller,* 498 Pa. 33, 43, 444 A.2d 653, 658 (1982); *Commonwealth v. Bellis,* 497 Pa. 323, 330 n. 9, 440 A.2d 1179, 1182 n. 9 (1981); *Commonwealth v. Payne,* 299 Pa.Super. 378, 379, 445 A.2d 804, 804 (1982); *Commonwealth v. Johnson,* 273 Pa.Super. 14, 17, 416 A.2d 1065, 1067 (1979). Moreover, the entire trial record must be evaluated, and all evidence actually received must be considered, whether or not the trial courts' rulings thereon were correct. *Commonwealth v. Waldman,* 484 Pa. 217, 222–223, 398 A.2d 1022, 1025 (1979); *Commonwealth v. Tabb,* 417 Pa. 13, 16, 207 A.2d 884, 886 (1965); *Commonwealth v. Plusquellic,* 303 Pa.Super. 1, 4, 449 A.2d 47, 49 (1982); *Commonwealth v. Bentley,* 276 Pa.Super. 41, 44, 419 A.2d 85, 86 (1980); *Commonwealth v. Williams,* 273 Pa.Super. 578, 582, 417 A.2d 1200, 1201 (1980)." *Commonwealth v. Barnes,* 310 Pa.Super. 480, 483, 456 A.2d 1037, 1038 (1983).

So viewed, the evidence established that appellants, together with Michael Joseph Curry and Mark Cassidy, had visited the home of Barry Fields, a brother of appellants, in Conshohocken, Montgomery County, on the afternoon of July 20, 1980. William Fields stated to the others that Vincent Esposito, the husband of his sometime paramour, Carol Esposito, had been harassing him and had again slashed the tires on his vehicle. William Fields let it be

known that he would like someone to take care of Vincent Esposito. A discussion ensued during which Charles Fields suggested breaking Esposito's arms and legs. Eventually, Mark Cassidy stated that he would take care of Esposito for William Fields. Later that afternoon, Cassidy and William Fields left Barry Fields' house and drove to Norristown where William Fields pointed out Esposito's residence and gave Cassidy a gun. William Fields and Cassidy then rejoined the others in Conshohocken. That evening, Cassidy, Charles Fields and Curry drove to Norristown. They parked their automobile several blocks from Esposito's apartment. While Curry, who had been injured when the gun accidentally discharged, remained in the vehicle,[5] Charles Fields and Cassidy went on foot to the Esposito home. Charles threw stones at the window of the second floor apartment, and when Esposito came downstairs and opened the door to investigate, Cassidy fired several shots from the gun provided by William Fields earlier in the day.[6] One of these shots struck and fatally injured Vincent Esposito.

 A person is guilty of an offense if it is committed by his own conduct or if he is an accomplice of the person who commits it. 18 Pa.C.S. § 306(a) and (b)(3). See: *Commonwealth v. Bradley*, 481 Pa. 223, 228, 392 A.2d 688, 690 (1978), *cert. denied*, 440 U.S. 938, 99 S.Ct. 1286, 59 L.Ed.2d 498 (1979); *Commonwealth v. Smith*, 480 Pa. 524, 528, 391 A.2d 1009, 1011 (1978); *Commonwealth v. Everett*, 297 Pa.Super. 320, 327, 443 A.2d 1142, 1145 (1982). A person is an accomplice of another person in the commission of an offense if, with the intent of promoting or facilitating the commission of the offense, he (1) solicits such other person to commit it; or (2) aids or agrees or attempts to aid such other person in planning or committing it. 18 Pa.C.S.

5. Curry entered pleas of guilty to third degree murder and conspiracy and testified as a Commonwealth witness.

6. Cassidy was tried separately and was convicted of murder in the third degree, recklessly endangering another person and criminal conspiracy. His conviction was reviewed and affirmed by this Court in *Commonwealth v. Cassidy*, 315 Pa.Super. 429, 462 A.2d 270 (1983).

§ 306(c)(1). See: *Commonwealth v. Coccioletti*, 493 Pa. 103, 109, 425 A.2d 387, 390 (1981); *Commonwealth v. Cunningham*, 301 Pa.Super. 209, 212, 447 A.2d 615, 617 (1982); *Commonwealth v. Carey*, 293 Pa.Super. 359, 373, 439 A.2d 151, 158 (1981).

█ William Fields, according to the evidence, solicited his friends to take care of Vincent Esposito, and, after Cassidy had agreed to do so, William Fields showed him where Esposito lived and gave Cassidy the gun with which Cassidy killed Esposito. Charles Fields was present and actively participated in the shooting. It was he who threw stones against the window to attract Esposito's attention and bring him to the door where he could be seen and shot by Cassidy. This evidence was sufficient to sustain the convictions; and appellants' motions in arrest of judgment were properly denied.

█ Whether a new trial should be granted on the grounds that a verdict is against the weight of the evidence is addressed to the sound discretion of the trial court; its decision will be reversed by a reviewing court only for an abuse of that discretion. *Commonwealth v. Zapata*, 447 Pa. 322, 327, 290 A.2d 114, 117 (1972); *Commonwealth v. Starks*, 298 Pa.Super. 213, 216, 444 A.2d 736, 738 (1982); *Commonwealth v. Rodriquez*, 291 Pa.Super. 239, 243 n. 3, 435 A.2d 888, 890 n. 3 (1981); *Commonwealth v. Larew*, 289 Pa.Super. 34, 37, 432 A.2d 1037, 1038 (1981). In determining whether to grant a new trial, the test is not whether the court would have decided the case the same way but whether the verdict was so contrary to the evidence as to make the award of a new trial imperative so that right may be given another opportunity to prevail. *Commonwealth v. Barnhart*, 290 Pa.Super. 182, 185, 434 A.2d 191, 192 (1981). This clearly is not such a case.

Appellants contend that the informations should have been quashed because preliminary hearings were not held

within the time frame established by Pa.R.Crim.P. 140.[7] This rule directs the issuing authority to fix a time for a preliminary hearing "which shall not be less than three nor more than ten days after preliminary arraignment unless extended for cause shown...." Pa.R.Crim.P. 140(d)(1). Appellants were arrested and preliminarily arraigned on December 5, 1980. Their preliminary hearing, originally scheduled for December 12, 1980, well within the ten day period, was postponed until December 17, 1980 in order that counsel could be secured for appellants, who were unrepresented. On December 17, 1980 appellants were still unrepresented.[8] While the Commonwealth, which had all its witnesses available, was prepared to proceed with the preliminary hearing, William Fields stated a preference that the matter be continued until counsel had been appointed for all co-defendants. Attorneys were in fact appointed on December 22, 1980, and the preliminary hearing was scheduled for the following day. That hearing was continued by agreement of counsel to December 29, 1980 in order to permit all counsel to attend the funeral of the late Honorable Milton O. Moss. The preliminary hearing was held, as scheduled, on December 29, 1980.

The law is clear that delay incurred for the purpose of procuring counsel for an accused constitutes sufficient cause to postpone a preliminary hearing beyond the ten day

7. Although not included in the statement of questions involved, appellants make an additional argument that the informations should have been quashed because of the Commonwealth's failure to set forth a prima facie case at the preliminary hearing and at the subsequent habeas corpus hearing. This contention is patently without merit. In its written opinion, the trial court reviewed the evidence presented at both hearings and properly concluded that the Commonwealth had met its burden by showing prima facie that appellants had participated in the commission of a crime. It is unnecessary to repeat that review of the evidence here; suffice it to say that the evidence was not rendered insufficient because some of the evidence received was hearsay. See: *Commonwealth v. Branch*, 292 Pa.Super. 425, 430, 437 A.2d 748, 750 (1981).

8. Appellant, Charles Fields, was not present for this hearing, having been transported to Berks County to answer criminal charges there pending against him.

period. *Commonwealth v. Barnett,* 253 Pa.Super. 39, 43–44, 384 A.2d 965, 967 (1978). The trial court properly refused appellants' motions to quash.

"[Q]uestions of consolidation or severance of defendants for trial rests [sic] in the discretion of the trial court and will not be reversed in the absence of an abuse of that discretion." *Commonwealth v. Norman,* 272 Pa.Super. 300, 306, 415 A.2d 898, 902 (1979). "[T]he burden is on appellant to show that there was a substantial prejudice to him as a result of the refusal to sever." *Commonwealth v. Iacino,* 265 Pa.Super. 375, 385, 401 A.2d 1355, 1360 (1979). "[A] joint trial [is] permissible, if not advisable, when the crimes charged grew out of the same acts and much of the evidence is necessary or applicable to [all] defendants." *Commonwealth v. Jackson,* 451 Pa. 462, 464, 303 A.2d 924, 925 (1973), quoting *Commonwealth v. Kloiber,* 378 Pa. 412, 106 A.2d 820, *cert. denied,* 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed. 688 (1954). The American Bar Association Minimum Standards for Criminal Justice Relating to Joinder and Severance suggest consideration of the following factors which, if present, recommend a severance: "(1) whether the number of defendants or the complexity of the evidence as to the several defendants is such that the trier of fact probably will be unable to distinguish the evidence and apply the law intelligently as to the charges against each defendant; (2) whether evidence not admissible against all the defendants probably will be considered against the defendant notwithstanding admonitory instructions; and (3) whether there are antagonistic defenses." Commentary to Standard 2.3(b). See also Pa.R.Crim.P. 1127, 1128.

■ Because there were in the case *sub judice* only two defendants and the evidence was neither complex, confusing nor admissible against only one defendant, we agree with the trial court that the case was one wherein the jury could "distinguish the evidence and apply the law intelligently as to the charges against each defendant." There was no abuse of discretion in consolidating for trial the charges against William and Charles Fields. Such a consoli-

dation was in the interest of judicial economy and did not unfairly prejudice either appellant.

"A prospective juror should be excused for cause in two situations: 'The first is where the prospective juror indicates by his answers that he will not be an impartial juror.... The second is where, irrespective of the answers given on voir dire, the court should presume the likelihood of prejudice on the part of the prospective juror because the potential juror has such a close relationship, be it familial, financial, or situational, with any of the parties, counsel, victims or witnesses.' *Commonwealth v. Stamm*, 286 Pa. Super. 409, 415–416, 429 A.2d 4, 7 (1981) quoting *Commonwealth v. Colon*, 223 Pa.Super. 202, 299 A.2d 326 (1972)." *Commonwealth v. Johnson*, 299 Pa.Super. 172, 176–177, 445 A.2d 509, 511 (1982). "In order to succeed in challenging a venireman for cause, appellant must show that the prospective juror had a bias or prejudice 'that could not be readily set aside and would in fact influence and color his judgment.'" *Commonwealth v. McBee*, 267 Pa.Super. 49, 54–55, 405 A.2d 1297, 1300 (1979) quoting *Commonwealth v. Hoss*, 469 Pa. 195, 204, 364 A.2d 1335, 1340 (1976).

In the instant case, one potential juror had a son-in-law who was an assistant district attorney in a neighboring county; the home of a second had previously been burglarized; and a third was the brother of a liquor store holdup victim. These circumstances did not present situations in which the relationships of the prospective jurors with some person or aspect of the case were sufficiently close to require disqualification. Each of the three prospective jurors indicated unhesitatingly that he would be able to render a fair and impartial verdict. The trial court, therefore, did not err in refusing to strike these veniremen for cause.[9]

9. Appellants also contend that the trial court erred in refusing to allow questions concerning the veniremens' prior service on juries. The record belies this claim. Indeed, the potential juror who indicated that he had previously served on a jury was independently examined by the trial court and all counsel. None of the questions propounded by appellants' counsel was objected to by the district attorney or prohibited by the trial court. It was established that the

■ The grant or refusal of a motion for mistrial generally rests within the sound discretion of the trial court and will not be reversed on appeal in the absence of a flagrant abuse of that discretion. *Commonwealth v. Dumas*, 299 Pa.Super. 335, 344, 445 A.2d 782, 787 (1982); *Commonwealth v. Green*, 287 Pa.Super. 220, 226, 429 A.2d 1180, 1183 (1981); *Commonwealth v. Pifer*, 284 Pa.Super. 170, 183, 425 A.2d 757, 763 (1981); *Commonwealth v. Farrell*, 265 Pa.Super. 41, 52–53, 401 A.2d 790, 796 (1979) (citing cases). "In determining whether to grant the request, the necessary inquiry is whether the alleged occurrence was prejudicial to the defendant, 'that is, [whether] it is of such a nature ... that it may reasonably be said to have deprived the defendant of a fair and impartial trial.'" *Commonwealth v. Farrell, supra*, quoting *Commonwealth v. Phillips*, 183 Pa.Super. 377, 382, 132 A.2d 733, 736 (1957).

■ Appellants contend that a mistrial should have been granted because the testimony of Carol Esposito, the victim's widow, was unduly prejudicial and inflammatory. The record does not support this contention. She had been an eyewitness to the shooting, and her testimony on direct examination was descriptive of the events she had witnessed and of her relationship with the victim and appellant. This testimony was not in the least inflammatory. However, she was vigorously cross-examined by appellants' counsel, and if her responses to questions asked on cross-examination divulged irrelevant facts, neither the trial court nor the prosecuting attorney can be faulted. Whether to inquire further regarding the relationship between the witness, her husband, and William Fields was a strategic decision that could be made only by appellants and their respective attorneys. Their decision regarding the scope of cross-examination may, in hindsight, have been unwise. However, it did not require the granting of a mistrial. A

prospective juror had served as a juror three years earlier and had been selected in only one criminal case which had gone to completion. The venireman further indicated that he would be able to evaluate the instant case fairly and impartially without regard to his previous experience.

criminal defendant is not entitled to a mistrial merely because his trial strategy does not achieve a desired effect.

Appellants also contend that a mistrial was necessary because the prosecuting attorney cross-examined a defense witness as to whether she was, at the time of trial, driving William Fields' truck. They contend that the question implied that appellant was either incarcerated or had given the truck to the witness in exchange for her favorable testimony. There is no merit in this contention. In the first place, the prosecutor was entitled to demonstrate the existence of a close relationship between appellant and the witness in order to show bias on the part of the witness. See: *Commonwealth v. Hutchinson*, 290 Pa.Super. 254, 267, 434 A.2d 740, 746 (1981) (A witness may be impeached by cross-examination tending to show the witness' bias, interest or prejudice). Secondly, even before defense counsel had voiced an objection, the witness answered the question in the negative and thereby eliminated any possible adverse inference from the question. The trial court did not abuse its discretion when it denied appellants' motion for mistrial.

Appellants final motion for mistrial was based on an alleged violation by the Commonwealth's chief investigator of a sequestration order. Appellants asserted that the investigator had intimidated Commonwealth witnesses by threatening them with prosecution and imprisonment in the event their trial testimony differed from their earlier statements. In response to this charge, the trial court conducted a lengthy hearing outside the presence of the jury. After taking testimony from the witnesses and the investigator, the trial court concluded that there had been neither intimidation of witnesses nor violation of the sequestration order.

A decision as to whether to sequester witnesses is initially one within the discretion of the trial court. *Commonwealth v. Fawcett*, 297 Pa.Super. 379, 382, 443 A.2d 1172, 1173 (1982); *Commonwealth v. Bellacchio*, 296 Pa.Super. 468, 478, 442 A.2d 1147, 1152 (1982). Similarly, a

court's finding that a violation of a sequestration order has not occurred or has not prejudiced the defendant will not be disturbed so long as it is not arbitrary and is supported by the evidence. Compare: *Commonwealth v. Smith,* 464 Pa. 314, 320–321, 346 A.2d 757, 760 (1975) (Remedy for violation of sequestration order is within the sound discretion of the trial court, which should consider the seriousness of the violation and its impact on the testimony of the witnesses and the outcome of the trial); *Commonwealth v. Johnson,* 273 Pa.Super. 14, 18, 416 A.2d 1065, 1067 (1979) (Selection of a remedy for the violation of a sequestration order is in the sound discretion of the trial judge and will not be disturbed absent an abuse thereof). The trial court found that its sequestration order had not been violated, and we find no basis for finding an abuse of discretion.

The admissibility of photographs is another matter that is peculiarly within the discretion of the trial judge. His rulings thereon will be reversed only if there has been an abuse of discretion. *Commonwealth v. Kaster,* 300 Pa.Super. 174, 178, 446 A.2d 286, 288 (1982). Appellants complain that two black and white photographs of the scene of the crime should not have been received because they showed blood stains in the doorway and on the staircase where the victim fell after being shot. They also contend that it was error to receive a third photograph which showed the path taken by the victim after the shooting, because it also showed one of the victim's bare feet. These photographs possessed significant probative value and supported the Commonwealth's version of the circumstances surrounding the shooting. They did no more than depict the scene of the crime. They were neither gruesome nor likely to inflame the passions of the jurors. Their admissibility was properly within the discretion of the trial court. See: *Commonwealth v. Green,* 488 Pa. 611, 614–615, 413 A.2d 651, 653–654 (1980); *Commonwealth v. Hubble,* 314 Pa.Super. 99, 460 A.2d 784 (1983); *Commonwealth v. Thorpe,* 270 Pa.Super. 221, 227–228, 411 A.2d 497, 500 (1979), citing *Commonwealth v. Petrakovich,* 459 Pa. 511,

329 A.2d 844 (1974); *Commonwealth v. Oates,* 269 Pa.Super. 157, 162, 409 A.2d 112, 115 (1979).

■ Appellants objected to the testimony of Michael Joseph Curry, an alleged co-conspirator, who established the origin of the weapon used in the shooting. Curry testified that Mark Cassidy, another alleged co-conspirator, had said that William Fields had provided him with the gun and necessary ammunition. The statement was purportedly made after the parties had left Barry Fields' home in Conshohocken but prior to their departure for Norristown, where the shooting took place. Appellants contend that the admissibility of this statement under the co-conspirators' exception to the hearsay rule was not duly established because the Commonwealth failed to prove, by a preponderance of the evidence, either the existence of a conspiracy or that the statement had been made in furtherance thereof. See: *Commonwealth v. Plusquellic, supra* 303 Pa.Super. at 7, 449 A.2d at 51 (citing cases). The record contradicts appellants' contention. The evidence adduced at trial established that a conversation had taken place on the afternoon of the crime, during which the participants, including the two appellants, Cassidy and Curry, discussed taking retaliatory action against the victim, Vincent Esposito. This evidence was sufficient to establish the existence of a conspiracy; the statement by appellants' alleged co-conspirator as to the source of the weapon was made during the course of that conspiracy and in furtherance thereof. As such, it was properly received. See: *Commonwealth v. Hubble, supra; Commonwealth v. Scarborough,* 313 Pa.Super. 521, 460 A.2d 310 (1983).

■ Appellants' final averment of trial error pertains to the propriety of the court's jury instructions. Appellate review of the charge of the court for prejudicial and reversible error requires that the charge be read and considered in its entirety; error will not be predicated upon isolated excerpts. *Commonwealth v. Romeri,* 314 Pa.Super. 279, 297, 460 A.2d 1139, 1148 (1983). It is the general effect of the charge which controls. *Commonwealth v. Woodward,*

483 Pa. 1, 4, 394 A.2d 508, 510 (1978). After having examined carefully the jury charge, particularly with respect to appellants' contentions that the trial judge failed to define properly the offenses with which appellants were charged, we conclude that the trial judge's instructions adequately and accurately defined the offenses, including the constituent elements thereof. The instructions were clear and concise and in accord with the pertinent sections of the Pennsylvania Crimes Code.

■ William Fields would also fault the trial judge for failing to explain the reason for imposing upon him a sentence different than that imposed upon Michael Joseph Curry. This issue, however, has not been preserved for appellate review. Although he filed a motion to modify his sentence, William Fields' only complaint was that the sentencing court had neglected to consider his background and character. The alleged disparity with Curry's sentence was not raised and has, therefore, been waived. See: *Commonwealth v. Brown*, 288 Pa.Super. 171, 175, 431 A.2d 343, 345 (1981).[10]

■ Finally, being represented by different appellate counsel, appellants contend for the first time on appeal that in numerous respects their separate trial counsel were ineffective. Many of these assertions appear to be frivolous, and several have already been rejected implicitly in

---

**10.** If we were required to consider this contention, we would nevertheless reject it. "A trial judge is not bound to impose similar sentences on all participants of a crime .... Disparity of sentences is permissible when facts exist to warrant the unequal sentences.... When rational support exists to justify the different treatment, there is no denial of equal protection." *Commonwealth v. Parry*, 306 Pa.Super. 390, 395, 452 A.2d 781, 783 (1982) (citations omitted). Curry, who had pleaded guilty to third degree murder and criminal conspiracy, testified at his co-conspirators' trials on behalf of the Commonwealth. He had not participated in any act of aggression against the victim but had remained in the getaway car parked several blocks from the actual crime scene. Curry's less culpable conduct, together with his remorse and cooperation with law enforcement agencies, differed sharply from appellant's conduct. The trial court did not abuse its discretion in imposing a more severe sentence on William Fields.

this opinion. Others, however, cannot be determined from the existing record and require an evidentiary hearing. These include averments that counsel failed to "check" witnesses and refused to speak with William Fields or allow him to testify in his own behalf. To permit an evidentiary hearing on these charges of ineffectiveness, we are obliged to vacate the judgment of sentence, at least for the time being, and remand for an evidentiary hearing. See: *Commonwealth v. Turner*, 469 Pa. 319, 324, 365 A.2d 847, 849 (1976). If it is determined that any trial counsel was ineffective, his client must be granted a new trial. If an appellant's counsel rendered constitutionally effective assistance, that appellant's judgment of sentence shall be reimposed.

The judgments of sentence are vacated, and the cases are remanded for evidentiary hearings on appellants' averments that they received ineffective assistance of counsel. Jurisdiction is not retained.