500 A.2d 102

**COMMONWEALTH of Pennsylvania**

v.

**Paul T. LYONS, a/k/a Paul T. Lyons, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 16, 1984.

Filed Oct. 4, 1985.

Robert B. Manchester, Bellefonte, for appellant.

Robert A. Mix, District Attorney, Bellefonte, for Commonwealth, appellee.

Before SPAETH, President Judge, and CAVANAUGH, WIEAND, McEWEN, CIRILLO, DEL SOLE, JOHNSON, POPOVICH and CERCONE, JJ.

McEWEN, Judge:

The PCHA[1] court, following a determination that appellant had been improperly denied a direct appeal from the judgment of sentence imposed subsequent to his conviction upon three counts of assault by a prisoner and aggravated assault and battery, granted appellant the right to bring this appeal *nunc pro tunc*. *See Commonwealth v. Miranda*, 296 Pa.Super. 441, 442 A.2d 1133 (1982).

Appellant asserts that trial counsel was ineffective as a result of his failure to have a court reporter record the *voir dire* examination since without such a transcript he is unable to demonstrate in a direct appeal that one member of the jury which found him guilty was biased. Appellant contends that the absence of a transcript or an equivalent picture of the *voir dire* proceedings, wherein "[o]ne of the jurors said that he was associated or was a friend of somebody from Rockview", requires that he receive a new trial. We find the allegation of ineffectiveness to be without merit and, thus, affirm the judgment of sentence.

Appellant was an inmate at the State Correctional Institution at Rockview on February 22, 1973, when he attacked three guards with a knife. Appellant told one of the victims "I will kill you, you 'son-of-a-bitch' " as he stabbed him in the head, the arm and in the abdomen, the last wound requiring the placement of sutures. Another of the guards was cut twice on the arm. All three guards who had been attacked by appellant provided totally consistent

1. Act of January 25, 1966, P.L. (1965) 1580, § 1 *et seq.*, 19 P.S. § 1180–1 *et seq.*, repealed, Act of April 28, 1978, P.L. 202, No. 53, § 2(a) [1397], as amended, Act of June 26, 1980, P.L. 265, No. 77, § 2, which delayed repeal until June 27, 1981, as further amended by the Act of June 26, 1981, P.L. 123, No. 41, § 1 which delayed repeal until June 26, 1982, repealed, Act of May 13, 1982, P.L. 417, No. 122, § 2, which replaced the prior Act by adding 42 Pa.C.S.A. § 9541 *et seq.*, as suspended by Pa.R.Crim.P., Rule 1507, 42 Pa.C.S., insofar as it is inconsistent with the Rules.

testimony upon the entire occurrence. Appellant testified at trial that he had no recollection of any part of the occurrence by reason of the fact that approximately two hours before the incident:

I felt peculiar to the extent that I had become, you know, real paranoid. My vision was starting, you know, to get blurred, like, you know, I started hearing things, like things were being magnified and I found myself starting to do things, like, you know, doing a whole lot of things all at one time, you know.

\* \* \*

I thought I seen, you know, like, some imaginary, you know, like a ghost. It looked like a blob, or something, coming at me.

The jury found appellant guilty of assault by a prisoner, assault with intent to kill and aggravated assault and battery. Trial counsel timely filed a motion in arrest of judgment challenging the sufficiency of the evidence with regard to all charges. The trial judge arrested judgment upon the offense of assault with intent to kill and imposed a sentence of not less than four years and not more than eight years upon the convictions for assault by a prisoner and aggravated assault and battery. Immediately after sentencing, appellant directed a letter to trial counsel in which he requested counsel to file an appeal on his behalf. Counsel promptly replied by letter that he was unaware of any grounds for appeal and requested appellant to indicate the grounds upon which he desired to appeal. No direct appeal was ever undertaken.

Appellant then filed a *pro se* PCHA petition on June 19, 1975, in which he raised more than twenty-four allegations of trial error and instances of ineffectiveness on the part of trial counsel.[2] Through no fault of appellant, no action was taken on his *pro se* PCHA petition for almost five years. Counsel was finally appointed and caused an amended

2. The petition, however, made no reference to the claim of juror prejudice subsequently raised in the amended PCHA petition filed six years thereafter.

PCHA petition to be filed on January 14, 1981. The amended petition alleged, *inter alia,* that trial counsel had been (a) ineffective as a result of his failure to undertake a direct appeal from the judgment of sentence, (b) ineffective as a result of his failure "to challenge an individual juror of petitioner's jury that was prejudiced toward petitioner", and (c) ineffective by reason of his failure to request that the jury selection proceedings be recorded. The PCHA court correctly concluded, following an evidentiary hearing, that appellant had been denied his right to a direct appeal and entered an order permitting appellant to file this appeal *nunc pro tunc. See Commonwealth v. Miranda, supra.*

■ As heretofore observed, appellant argues that he is entitled to a new trial as a result of the absence of a transcript of the *voir dire* examination. Since appellant did not request that the *voir dire* proceedings be transcribed, and since appellant failed to raise in his post-verdict motions any allegations of error concerning the selection of the jury, we would ordinarily consider these claims waived. *See Commonwealth v. Yohn,* 271 Pa.Super. 537, 540, 414 A.2d 383, 385 (1979). However, as a result of appellant's allegations concerning the quality of counsel's representation, we will, nonetheless, consider these assertions within the narrowed context of appellant's claim that counsel was ineffective by reason of his failure to provide for the *voir dire* examination to be stenographically recorded so as to enable meaningful appellate review of the claim that a juror was biased.

"In reviewing a claim of ineffectiveness of counsel, with regard to the performance component, a two pronged test has been employed. First our courts have determined whether the claim that counsel failed to assert was of arguable merit. *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977); *see also Commonwealth v. Parker,* 503 Pa. 336, 469 A.2d 582 (1983); *Commonwealth v. Lesko,* 502 Pa. 511, 467 A.2d 307 (1983); *Commonwealth v. Tabron,* 502 Pa. 154, 465 A.2d 637 (1983); *Commonwealth v. Golson,* 310 Pa.Super. 532, 456 A.2d 1063 (1983). Counsel

will not be deemed ineffective for failing to assert a baseless claim. *Commonwealth v. Hubbard, supra; see also Commonwealth v. Schreiber,* 319 Pa.Super. 237, 466 A.2d 203 (1983)." *Commonwealth v. Garvin,* 335 Pa.Super. 560, 564, 485 A.2d 36, 38 (1984).

Our study of the record for this purpose reveals that the Commonwealth and appellant stipulated at the PCHA hearing that "the questioning and testimony on *voir dire,* opening and closing statements of counsel at trial, arguments of counsel at post-trial motions are not available for the reason that they were by custom of the [Centre County] Court not recorded and, therefore, cannot be reproduced at this time." [3]

■ It seems well established that where the *entire* transcript of a trial is unavailable, meaningful appellate review is not possible, and a new trial must be awarded. *See Commonwealth v. De Simone,* 447 Pa. 380, 290 A.2d 93 (1972); *Commonwealth v. Anderson,* 441 Pa. 483, 272 A.2d 877 (1971); *Commonwealth v. Homsher,* 264 Pa.Super. 271, 399 A.2d 772 (1979); *Commonwealth v. Dixon,* 253 Pa.Super. 383, 385 A.2d 391 (1978). *See also Commonwealth v. Shields,* 477 Pa. 105, 383 A.2d 844 (1978) (New trial awarded due to impossibility of appellate review where Commonwealth did not contradict appellant's argument that the prosecutor's summation had contained reversible error to which timely objections had been made). In every instance in which a new trial was awarded, however, *meaningful appellate review* had been rendered impossible due to the absence of a transcript *or an equivalent picture* of the proceedings at trial. "In order to assure that a defendant's right to appeal will not be an empty, illusory right, we require that he or she be furnished a full transcript or other equivalent picture of the trial proceedings. Meaningful appellate review is otherwise an impossibility, and fairness dictates that a new trial be granted." *Commonwealth v. Shields, supra,* 477 Pa. at 108–09, 383 A.2d at 846.

3. See Pa.R.Crim.P. 1106(c).

■ It is well settled that the requisite " 'record of sufficient completeness' does not translate automatically into a complete verbatim transcript.... Alternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise.' " *Mayer v. City of Chicago,* 404 U.S. 189, 194, 92 S.Ct. 410, 414, 30 L.Ed.2d 372 (1971) *quoting Draper v. Washington,* 372 U.S. 487, 495, 83 S.Ct. 774, 778, 9 L.Ed.2d 899 (1963). The Commonwealth has the burden, of course, of providing an "equivalent picture" in lieu of a transcript but may, in attempting to reconstruct the proceedings, "utilize whatever witnesses may be available, including trial counsel." *Commonwealth v. Goldsmith,* 452 Pa. 22, 28–29, 304 A.2d 478, 482 (1973).

■ Appellant argues that he has been denied his right to an effective appeal due to counsel's failure to secure a transcript which would disclose that a juror indicated during the *voir dire* examination that she was a friend of a prison employee. We believe, however, that the equivalent picture of the *voir dire* examination provided by the Commonwealth is sufficient to permit meaningful appellate review of the specific error alleged by appellant, namely, that *solely* by virtue of an association or friendship on the part of a juror with a prison employee, appellant was denied his right to a fair and impartial jury.[4]

4. *Commonwealth v. Smith,* 285 Pa.Super. 460, 427 A.2d 1378 (1981), does not compel a contrary conclusion. The appellant in *Smith* had alleged, in post-verdict motions and on appeal, that he was entitled to a new trial as: "[j]ury selection was unfair, the defendant was not allowed to ask jurors proper questions and certain challenges for cause should have been granted." A record of the *voir dire* had been made, but the trial court had refused a request that the notes be transcribed. This Court remanded for transcription of the notes and disposition *nunc pro tunc* of the allegations of error, citing "the responsibility of the state to see that the transcript is made available to appellant so that he may *effectively pursue his appeal rights". Id.,* 285 Pa.Superior Ct. at 462, 427 A.2d at 1379 *quoting Commonwealth v. Morgan,* 469 Pa. 35, 37, 364 A.2d 891, 892 (1976) (emphasis supplied). Due to the availability of the transcript of the *voir dire* examination, there was no need to provide an equivalent picture of the proceedings through other means.

■ Crucial to our analysis and decision is the PCHA testimony of trial counsel for appellant that his notes from the *voir dire* reflected that a member of the jury had indicated during the *voir dire* examination that she was a "close friend of police". Those notes further disclosed that several other veniremen had been successfully challenged for cause and that all peremptory challenges had been exhausted during the selection process, with each of the peremptory challenges exercised only after consultation with appellant. Counsel in his PCHA testimony described his actions during the *voir dire* as follows: "whenever we conducted the challenge for cause, it was a standard question in the Public Defender's Office when we represented an inmate at Rockview to ask on *voir dire* whether or not any prospective jurors were in fact employed or related or good friends of employees at Rockview because it was a real problem as I assume it is today. Rockview has a large employment. So that was usually the standard challenge for cause and the Court then would ask the questions of objectivity.... That question has always been asked on challenge and then it was subject to the judge's decision as to whether or not he thought they'd be biased."

Thus, it is clear that when a juror was challenged, the trial judge conducted an inquiry as to the validity of the challenge and then either excused the juror for cause or determined the juror could rise above any bias. That procedure is consistent with the test that our Supreme Court has often prescribed: "[t]he question relevant to a determination of qualification is whether any biases or prejudices can be put aside upon the proper instruction of the court." *Commonwealth v. Drew,* 500 Pa. 585, 589, 459 A.2d 318, 320 (1983). " 'A prospective juror should be excused for cause in two situations: "the first is where the prospective juror indicates by his answers that he will not be an impartial juror.... The second is where, irrespective of the answers given on *voir dire,* the court should presume the likelihood of prejudice on the part of a prospective juror because the potential juror has such a close relationship, be

it familial, financial, or situational, with any of the parties, counsel, victims or witnesses." ' *Commonwealth v. Stamm,* 286 Pa.Super. 409, 415–416, 429 A.2d 4, 7 (1981) *quoting Commonwealth v. Colon,* 223 Pa.Super. 202, 299 A.2d 326 (1972). *Commonwealth v. Johnson,* 299 Pa.Super. 172, 176–177, 445 A.2d 509, 511 (1982)." *Commonwealth v. Fields,* 317 Pa.Super. 387, 398–99, 464 A.2d 375, 381 (1983).

Appellant contends that the association or friendship of the juror at issue is the type of relationship which requires that we *presume* the likelihood of prejudice on her part irrespective of the decision of the trial judge that her answers during his *voir dire* inquiry reflected that she would be objective. We disagree. In the absence of any indication of bias or prejudice on the part of the juror, the trial court properly exercised its discretion in refusing to excuse the juror for cause. As a result, we reject the assertion that appellant was denied a trial by an impartial jury. *See United States v. Collins,* 395 F.Supp. 629, 635 (M.D.Pa.1975) (No merit to appellant/prisoner's contention that the trial court improperly refused to strike for cause four jurors; one of whom knew two potential government witnesses, two of whom had a personal friend employed at Lewisburg Penitentiary and one whose son-in-law was a guard at the penitentiary); *Commonwealth v. Patterson,* 488 Pa. 227, 412 A.2d 481 (1980) (No abuse of discretion by trial court in refusing to excuse for cause juror who attended same church as prosecuting police officer); *Commonwealth v. Carter,* 444 Pa. 405, 282 A.2d 375 (1971) (Trial court did not abuse its discretion in refusing to strike for cause juror who was casual acquaintance of murder victim's mother); *Commonwealth v. Fields, supra,* 317 Pa.Super. at 398–99, 446 A.2d at 381. (Trial court did not err in refusing to strike one juror whose son-in-law was an assistant district attorney in another county nor err in refusing to strike two jurors, one of whom had been the victim of burglary and the other whose brother had been robbed); *Commonwealth v. Stamm, supra* (No abuse of discretion in refusing

to strike juror who was aunt of a member of district attorney's staff and also related to police prosecutor in case); *Commonwealth v. Warner,* 209 Pa.Super. 215, 220–21, 225 A.2d 98, 101 (1966) *cert. denied* 389 U.S. 986, 88 S.Ct. 477, 19 L.Ed.2d 479 (1967). (Trial court did not abuse its discretion in refusing to strike for cause juror who was wife of the President Judge's court stenographer or juror who was wife of former district attorney of county who had been out of office for six years at time of trial).

In summary, therefore, we not only reject appellant's contention that meaningful appellate review was precluded by the absence of a record of the *voir dire* examination but also reject appellant's underlying assertion that he was denied his right to a fair and impartial jury solely by reason of a friendship between a juror and a prison employee. The issues underlying the charge of ineffectiveness being devoid of merit, counsel cannot be found ineffective.[5]

Judgment of sentence affirmed.

SPAETH, President Judge, files a dissenting opinion.

SPAETH, President Judge, dissenting:

I should hold that the unavailability of a transcript or equivalent picture of the voir dire during which the jury was selected has effectively deprived appellant of his right to appeal, and that the judgment should therefore be vacated and the case remanded for a new trial.

The States are not required to provide appellate review of criminal convictions, *McKane v. Durston,* 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894), but if they do provide appellate review, the appeal must be more than a "meaningless ritual". *Evitts v. Lucey,* —— U.S. ——, 105 S.Ct. 830, 83

---

5. Due to our conclusion that counsel provided effective representation, it is unnecessary to determine whether appellant suffered any prejudice as a result of counsel's conduct, that is, that "'but for counsel's unprofessional errors, the result of the proceeding would have been different....'" *Commonwealth v. Mills,* 332 Pa.Super. 75, 85, 480 A.2d 1192, 1197 (1984) *quoting Strickland v. Washington,* 466 U.S. 668, 688–689, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692 (1984). *See also Commonwealth v. Garvin, supra.*

L.Ed.2d 821 (1985); *see also Griffin v. Illinois,* 351 U.S. 12 at 20, 76 S.Ct. 585 at 591, 100 L.Ed. 891 (1956). To ensure that the appeal is not meaningless, the appellant must be provided with a transcript, or its equivalent, of the events at trial that the appellant wishes to challenge by the appeal. *Draper v. Washington,* 373 U.S. 487, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963). Once the appellant has shown "a colorable need for a complete transcript, the burden is on the state to show that only a portion of the transcript or an alternative will suffice for an effective appeal...." *Mayer v. Chicago,* 404 U.S. 189, 195, 92 S.Ct. 410, 415, 30 L.Ed.2d 372 (1971). These principles apply equally, whether appellant is indigent or is not. *Evitts v. Lucey, supra,* at ——, 105 S.Ct. at 834. To decide the appeal without a transcript would not only violate the Equal Protection Clause, if the appellant is too poor to afford a transcript, but also the Due Process Clause, for without a transcript the decision would be arbitrary. *Id.* at ——, 105 S.Ct. at 839.

Our Supreme Court has long recognized these principles. "If a meaningful appellate review is impossible, for whatever reason, and the appellant is not at fault, he is entitled to a new trial." *Commonwealth v. Shields,* 477 Pa. 105, 109, 383 A.2d 844, 846 (1978), *quoting Commonwealth v. Goldsmith,* 452 Pa. 22, 25, 304 A.2d 478, 480 (1973). "In order to assure that a defendant's right to appeal will not be an illusory right, we require that he or she be furnished a full transcript or other equivalent picture of the trial proceedings. Meaningful appellate review is otherwise an impossibility, and fairness dictates that a new trial be granted." *Id.,* 477 Pa. at 108, 383 A.2d at 846. *See also Commonwealth v. DeSimone,* 447 Pa. 380, 290 A.2d 93 (1972); *Commonwealth v. Norman,* 447 Pa. 515, 291 A.2d 112 (1972); *Commonwealth v. Anderson,* 441 Pa. 483, 272 A.2d 877 (1971).

In *Commonwealth v. Shields, supra,* the appellant argued that a meaningful appellate review was not possible because of the unavailability of a transcript of the prosecutor's closing argument, which the appellant alleged had

been improper. The Commonwealth argued that the appellant was not entitled to a new trial because he had not specifically quoted or described the remarks he found prejudicial. The Supreme Court rejected this argument, stating that "[i]f appellant could specifically quote or describe the alleged prejudicial portions of the closing argument, ... there would be no need for the missing portion of the transcript to ensure meaningful appellate review." *Id.* 477 Pa. at 109, 383 A.2d at 846.

Here, as in *Shields,* appellant could describe the alleged error in general terms—that his trial counsel or the trial court did not strike a juror, either for cause or peremptorily, who was prejudiced toward him—but he could not recall the details; the most he could say was that "[o]ne of the jurors said that he was associated or was a friend of somebody from Rockview." N.T. 11. Pressed for details, he said that he "was in opposition to that person on that jury" but "couldn't actually say what happened" with respect to the juror being challenged because his recollection was "rather cloudy". N.T. 13.[1] (More than five years had elapsed between the filing of his PCHA petition and the hearing on that petition.)

The recollection of trial counsel, who was called by the Commonwealth at the PCHA hearing, was equally cloudy. He testified that he had *no* independent recollection of the events that took place during the voir dire of appellant's jury. N.T. 36. His notes, he said, did not indicate that any of the prospective jurors was associated with or a friend of an employee at the prison. *Id.* He also testified that his standard practice when representing an inmate at Rockview was to ask whether "any prospective jurors were in fact employed or related or good friends of employees at Rockview ... and the Court then would ask the questions of objectivity." *Id.* at 36–37. However, he had no independent recollection or notes either that he asked that question in this case or, if he did, of what response he received.

1. All references to the notes of testimony are to the January 15, 1981, P.C.H.A. Hearing.

Trial counsel's notes did reflect that one juror was "a close friend of police," *id.* at 37, but he could not recall whether he challenged that juror, either for cause or peremptorily, *id.* at 38. The best trial counsel could do was *"assume* that we had more people that we wanted to strike peremptorily than we had peremptory challenges", *id.* (emphasis supplied), and *"assume* that of the six we peremptorily struck that this was a weighed decision that [appellant] was involved in," *id.* at 39 (emphasis supplied). Trial counsel testified: "It *may have been* a question of striking another person as number six versus striking this person. That's the only thing I can *assume* at this time." *Id.* at 39–40 (emphasis supplied).

Apparently the majority concedes that appellant has shown a colorable need for a full transcript of the voir dire, and I agree. Where I part company with the majority is that I do not agree with the majority that trial counsel's cryptic notes, unsupported by any independent recollection, are sufficient to meet the Commonwealth's burden of providing a "picture of the trial proceedings" that is "equivalent" to a "full transcript." *Commonwealth v. Shields, supra.* The majority states that "it is clear that when a juror was challenged, the trial judge conducted an inquiry as to the validity of the challenge and then either excused the juror for cause or determined that the juror could rise above any bias". At 592. The majority further refers to "the decision of the trial judge that [the juror's] answers during [trial counsel's] voir dire reflected that she would be objective." *Id.* at 593. I find nothing in the record, and the majority cites nothing, that shows what sort of inquiry the trial judge conducted, or what questions the juror was asked, or how she answered them, or why the juror was excused—by the trial judge for cause or because counsel exercised a peremptory challenge. Far from being "clear", these matters are all unknown; we can only speculate about what really happened.

Counsel testified that: "one juror who was seated as juror number eleven [] I have indicated [by notes made at

the time] as a close friend of police", N.T. 37; "[t]hat [juror] was not struck as a peremptory," *id.;* "several people ... were ... challenged for cause and they were struck....", *id.* at 38; and finally, "[w]e took all our [peremptory] challenges," *id.* at 39.

The first question raised by this testimony is whether counsel made *any* challenge to the juror who was "a close friend of police." Counsel did not recall having done so, and he had no notes that he had done so; nor did he say that as a matter of standard practice he would have done so, for in describing his standard practice he said only that it was "to ask on voir dire whether or not any prospective jurors were in fact employed or related or good friends of employees at Rockview", and to challenge any such jurors for cause, N.T. 36–37, not that it was standard to challenge a prospective juror who was "a close friend of police." If one assumes, however, as the majority assumes, and as I am willing to assume, that in fact counsel *did* challenge the juror who was "a close friend of police", still, the question remains, what happened to the challenge? Counsel said it was *not* a peremptory challenge. It must, therefore, have been for cause, and from that it follows that it must have been denied, and that raises the questions: Why was it denied? What did the juror say that showed that despite being "a close friend of police", she could and would be impartial? In short, did the trial judge abuse his discretion in denying the challenge (assuming there was a challenge)?

Nothing in the record answers these questions. By answering them anyway, the majority has indeed rendered this appeal a "meaningless ritual." For if the trial court should have sustained the challenge for cause, appellant is entitled to a new trial. *See Commonwealth v. Johnson,* 299 Pa.Super. 171, 445 A.2d 509 (1982) (even though trial counsel struck juror peremptorily, abuse of discretion in denying challenge for cause requires new trial where peremptory strikes exhausted before jury empaneled).

In another case we might remand for development of a picture of what occurred, equivalent to a transcript, but

that is not an available alternative here. As the judge who specially presided at the hearing on appellant's PCHA petition properly observed:

> There has been an inordinate delay on the part of the Court to replace the trial attorney with another attorney to represent Petitioner in the P.C.H.A., in spite of the fact that the original P.C.H.A. alleged incompetence of counsel. By the time that the Court appointed the present counsel to represent Petitioner, a period of more than five years elapsed which has caused Petitioner to suffer injustice by the operation of the Court.
>
> Slip op. of PCHA ct. at 3.

The PCHA court accordingly granted appellant the right to file this appeal *nunc pro tunc*. That relief, however, is inadequate, for given the absence of a transcript or its equivalent, the appeal is meaningless.

The judgment of sentence should be vacated and the case remanded for new trial.