J-S37002-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JASON WILLIAM ROE | |
| Appellant | No. 130 WDA 2015 |

Appeal from the Judgment of Sentence January 29, 2014
In the Court of Common Pleas of Greene County
Criminal Division at No(s): CP-30-CR-0000367-2012

BEFORE:  GANTMAN, P.J., SHOGAN, J., and LAZARUS, J.

MEMORANDUM BY GANTMAN, P.J.:          **FILED AUGUST 30, 2016**

Appellant, Jason William Roe, appeals from the judgment of sentence entered in the Greene County Court of Common Pleas, following his jury trial convictions of first-degree murder and aggravated assault.[1]  We affirm.

The relevant facts and procedural history of this case are as follows. Around June 2012, Appellant and his wife, Lana Kay Roe, moved to Daisytown, Pennsylvania, and befriended their neighbor, Cordele Patterson ("Victim").  Later that summer, Appellant and Mrs. Roe experienced marital difficulties, which resulted in both parties moving out of their residence in Daisytown.  In early August 2012, the parties reconciled and returned to their home.  Upon return, Appellant and Mrs. Roe discovered that someone

_____

[1] 18 Pa.C.S.A. §§ 2502(a) and 2702(a)(4), respectively.

had burglarized their home while they were away. Mrs. Roe contacted police and reported the incident. In her report, Mrs. Roe informed police that someone had taken numerous items from the home including twelve firearms. Appellant and Mrs. Roe suspected that Victim had committed the burglary. During subsequent discussions with Appellant and Mrs. Roe, Victim allegedly admitted to the burglary and agreed to return the stolen items.

In the early morning hours of August 14, 2012, Appellant took Victim to a cabin owned by the Brewer family. Appellant allegedly took Victim there to hide because Mrs. Roe had filed a police report about the burglary, which implicated Victim. After dropping Victim off, Appellant returned to Daisytown where he and Mrs. Roe went to Victim's home and started removing items that allegedly belonged to them. Appellant and Mrs. Roe then drove Mrs. Roe's Jeep out to the cabin. While on the way to the cabin, Appellant and Mrs. Roe stopped at a True Value hardware store and purchased a 12-gauge shotgun as well as buckshot and birdshot ammunition. Appellant and Mrs. Roe stopped again on the way to the cabin, so Appellant could test-fire the shotgun. When Appellant and Mrs. Roe reached the cabin, Appellant told Mrs. Roe to go inside and get Victim. Mrs. Roe complied and as she returned from the cabin with Victim behind her, Appellant shot Mrs. Roe in the face. Victim turned around and ran back into the cabin, while Mrs. Roe ran to her Jeep and drove away. Appellant chased

Victim into the cabin and fatally shot Victim at close-range in the arm and neck.

After Appellant shot her, Mrs. Roe drove to a neighbor's house, and the neighbor called the police and reported the shooting. Police and paramedics responded to the neighbor's house, and paramedics transported Mrs. Roe to Ruby Memorial Hospital in Morgantown, West Virginia. Police then proceeded to the cabin where they discovered Victim's body. Meanwhile, Appellant fled from the cabin on foot and borrowed a white van from a nearby relative. Appellant subsequently drove the van to West Virginia. Police obtained information about Appellant's vehicle and issued a BOLO on the van. West Virginia police subsequently stopped Appellant's vehicle in Morgantown, West Virginia, and Appellant surrendered to the West Virginia authorities. After West Virginia police transported Appellant to the local police barracks, Pennsylvania police officers, Corporal John Tobin and Trooper Jeremy Barni, read Appellant his **Miranda**[2] rights. Appellant waived his rights and told police that he shot Victim because Appellant feared for his safety and the safety of Mrs. Roe. Appellant informed police that he did not mean to shoot Mrs. Roe, and Mrs. Roe promptly fled in her Jeep after Appellant shot her. Appellant further explained to police that he heard additional gunshots after he accidentally shot Mrs. Roe, so he chased Victim

_____

[2] **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

into the cabin and fired more shots at Victim. Throughout his statement to Corporal Tobin and Trooper Barni, Appellant maintained that he had acted in self-defense or defense of Mrs. Roe when he fired the shots at Victim. Appellant, however, did admit that he saw no weapons or other items in Victim's hands prior to the shooting.

On October 15, 2012, the Commonwealth charged Appellant with criminal homicide and aggravated assault with a deadly weapon. The Commonwealth also charged Mrs. Roe with criminal homicide and related offenses. Appellant proceeded to a joint jury trial with Mrs. Roe on November 5, 2013. At trial, the Commonwealth presented evidence of numerous police officers and investigators involved in the case as well as numerous witnesses who were familiar with Appellant, Mrs. Roe, and Victim. The Commonwealth also presented the testimony of Trooper Todd M. Porter, who photographed Victim's autopsy, and the expert testimony of Dr. Cyril Wecht, who had performed Victim's autopsy. Prior to this testimony, Appellant's counsel objected to the Commonwealth's introduction of eight photographs of Victim's injuries. Specifically, Appellant's counsel objected to eight photographs: 103, 140, 147, 149, 154, 173, 198, and 209. Appellant's counsel argued these photos, especially the photographs of Victim's neck injury, were highly inflammatory and prejudicial. The court agreed to exclude photographs 103, 140, 154, and 173, but allowed the Commonwealth to admit photographs 147, 149, 198, and 209. The

excluded photographs involved images of Victim's close-range gunshot wound to the neck. The Commonwealth ultimately introduced photographs 115, 130, 135, 136, 137, 138, 139, 147, 149, 156, 158, 198, 207, and 209 during the testimony of Trooper Porter and Dr. Wecht. None of these photographs were of Victim's neck injury.

In Appellant's case-in-chief, Appellant testified that he shot Victim in either self-defense, defense of Mrs. Roe, or under the mistaken belief that Appellant was in imminent danger justifying the use of deadly force. Appellant specifically stated that he saw a flash before accidentally shooting Mrs. Roe and then heard gunshots and saw additional flashes while he was chasing Victim into the cabin. Appellant testified that he was concerned for his and Mrs. Roe's safety especially in light of Victim's alleged burglary of Appellant and Mrs. Roe's home. On November 15, 2013, the jury convicted Appellant of first-degree murder and aggravated assault with a deadly weapon. The court deferred sentencing pending the preparation of a pre-sentence investigation ("PSI") report.

On January 29, 2014, the court sentenced Appellant to life imprisonment without the possibility of parole for the first-degree murder conviction and a consecutive term of two (2) to four (4) years' imprisonment for the aggravated assault conviction. Appellant timely filed post-sentence motions on February 10, 2014, which the court eventually denied on December 8, 2014. Appellant timely filed a notice of appeal on January 7,

2015.[3] The court did not order Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant filed none.

On February 23, 2015, Appellant filed a *pro se* "motion to waive counsel and proceed from a *pro se* standing" in this Court. On March 9, 2015, this Court remanded the matter to the trial court to conduct a

_____

[3] "A direct appeal in a criminal proceeding lies from the judgment of sentence." ***Commonwealth v. Patterson***, 940 A.2d 493, 497 (Pa.Super. 2007), *appeal denied*, 599 Pa. 691, 960 A.2d 838 (2008). If a defendant in a criminal case files a timely post-sentence motion, the notice of appeal shall be filed within 30 days of the entry of the order deciding the motion. Pa.R.Crim.P. 720(A)(2)(a). The denial of a timely post-sentence motion becomes the triggering event for filing a notice of appeal. Pa.R.Crim.P. 720(A)(2). Generally, where a defendant timely files a post-sentence motion, the court shall decide the motion within 120 days of the filing; otherwise, the motion shall be deemed denied by operation of law. ***See*** Pa.R.Crim.P. 720(B)(3)(a). A clerk of courts' failure to enter an order stating a post-sentence motion has been denied by operation of law and to furnish the parties with a copy of the order, however, constitutes a breakdown in the court system. ***Commonwealth v. Braykovich***, 664 A.2d 133, 138 (Pa.Super. 1995), *appeal denied*, 544 Pa. 622, 675 A.2d 1242 (1996). Such a breakdown warrants extension of the appeal period or the grant of an appeal *nunc pro tunc*. ***Id.*** Instantly, the record makes clear Appellant timely filed his post-sentence motion. The court did not hold a hearing or rule on the motion with 120 days (no extension was requested). Thus, the post-sentence motion was deemed denied by operation of law. Nevertheless, the clerk of courts failed to enter a Rule 720(B)(3)(c) order on behalf of the court, which constitutes a breakdown in the court system. ***See id.*** The trial court eventually denied the post-sentence motion on December 8, 2014. Therefore, we will treat the December 8, 2014 order as a Rule 720(B)(3)(c) order solely for purposes of the date on which this appeal period began to run. Appellant timely filed his notice of appeal on January 7, 2015, within the 30-day appeal period, so we have no impediment to appellate jurisdiction. ***See Patterson, supra*** (stating appellate court can raise issue of jurisdiction *sua sponte*).

*Grazier*[4] hearing and determine if Appellant's request to proceed *pro se* is knowing, voluntary, and intelligent. This Court's March 9, 2015 order also directed the trial court to ensure Appellant's receipt of all materials of record necessary to prosecute the appeal. The trial court held a ***Grazier*** hearing on April 15, 2015, and subsequently determined that Appellant made his request to proceed *pro se* knowingly, voluntarily, and intelligently. On April 24, 2015, this Court entered an order, which stated Appellant would proceed *pro se* on appeal and allowed Appellant's trial counsel leave to withdraw as counsel. On September 4, 2015, Appellant filed a *pro se* application for remand and a *pro se* application to compel. The *pro se* application to compel asked this Court to compel the trial court to dispose of any outstanding motions. In response, on September 15, 2015, this Court forwarded the motion to the trial court to take any action, if necessary, to dispose of pending motions.

Appellant raises the following issues for our review:

> WHETHER THE COMMONWEALTH FAILED TO DISPROVE APPELLANT'S CLAIMS OF "SELF-DEFENSE," "DEFENSE OF OTHERS," AND/OR "UNREASONABLE BELIEF VOLUNTARY MANSLAUGHTER" BEYOND A REASONABLE DOUBT?
>
> WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW AND/OR ABUSED ITS DISCRETION IN ALLOWING THE ADMISSION OF HIGHLY PREJUDICIAL, INFLAMMATORY AND IRRELEVANT PHOTOGRAPHS OF [VICTIM]?

---

[4] ***Commonwealth v. Grazier***, 552 Pa. 9, 713 A.2d 81 (1998).

WHETHER THE TRIAL COURT'S FAILURE TO COMPLY WITH THIS COURT'S MARCH 9, 2015 AND SEPTEMBER 15, 2015 *PER CURIAM* DIRECTIVES COMPELS THE GRANT OF A NEW TRIAL?

(Appellant's Brief at 6).

In his first issue, Appellant argues that at the time of the shooting, he believed Victim was armed with a firearm and about to cause serious bodily injury or death to Appellant or Mrs. Roe. Appellant contends he shot at Victim because he saw a flash as Victim approached Mrs. Roe from behind in a menacing manner. Appellant avers that he continued to fire at Victim after he accidentally shot Mrs. Roe because he heard additional shots and he feared for his and Mrs. Roe's safety. Appellant maintains this evidence established the circumstances justified his subjective belief about the necessity of deadly force to protect him and Mrs. Roe, especially in light of the fact that Mrs. Roe's testimony at trial largely corroborated Appellant's version of the shooting. Appellant claims the Commonwealth failed to offer any evidence to disprove Appellant's belief that he and Mrs. Roe were in danger of death or serious bodily injury. Appellant further asserts he did not engage Victim any longer than necessary to neutralize the threat Victim posed to Appellant and Mrs. Roe. Appellant concludes the Commonwealth failed to disprove beyond a reasonable doubt Appellant's claim that he acted in self-defense, defense of Mrs. Roe, or under the mistaken belief that the circumstances justified the use of deadly force, and this Court should vacate his conviction. We disagree.

Appellant's challenge to the sufficiency of the evidence implicates the following principles:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Barnswell Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005) (quoting *Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super. 2003)).

The Pennsylvania Crimes Code governs self-defense in relevant part as follows:

> **§ 505.  Use of force in self-protection**
>
> **(a) Use of force justifiable for protection of the person.**—The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other

person on the present occasion.

**(b) Limitations on justifying necessity for use of force.**—

\* \* \*

(2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat…

\* \* \*

18 Pa.C.S.A. §§ 505(a), (b)(2).

The Pennsylvania Crimes Code governs defense of others in relevant part as follows:

**§ 506.  Use of force for the protection of other persons**

**(a) General rule.**—The use of force upon or toward the person of another is justifiable to protect a third person when:

(1) the actor would be justified under section 505 (relating to use of force in self-protection) in using such force to protect himself against the injury he believes to be threatened to the person whom he seeks to protect;

(2) under the circumstances as the actor believes them to be, the person whom he seeks to protect would be justified in using such protective force; and

(3) the actor believes that his intervention is necessary for the protection of such other person.

**(b) Exception.**—Notwithstanding subsection (a), the actor is not obliged to retreat to any greater extent than the person whom he seeks to protect.

18 Pa.C.S.A. § 506.

The justified use of deadly force requires:

> a) the actor was free from fault in provoking or continuing the difficulty which resulted in the use of deadly force; b) the actor must have reasonably believed that he [or another] was in imminent danger of death or serious bodily injury, and that there was a necessity to use such force in order to save himself or others therefrom; and c) the actor did not violate any duty to retreat or to avoid the danger.

*Commonwealth v. Harris*, 542 Pa. 134, 137, 665 A.2d 1172, 1174 (1995).

The defendant has no "burden to prove" his self-defense or defense of others claim. *Commonwealth v. Torres*, 564 Pa. 219, 224, 766 A.2d 342, 345 (2001). The Supreme Court explained the evidentiary burdens as follows:

> While there is no burden on a defendant to prove [a self-defense or defense of others] claim, before that defense is properly at issue at trial, there must be some evidence, from whatever source to justify a finding of [self-defense or defense of others]. If there is any evidence that will support the claim, then the issue is properly before the fact finder.

*Id.* (internal citations omitted). If the defendant properly raises self-defense under Section 505 or defense of others under Section 506, the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense or defense of others. *Commonwealth v. McClendon*, 874 A.2d 1223, 1229-30 (Pa.Super. 2005).

> The Commonwealth sustains this burden if it establishes at least one of the following: 1) the accused did not

reasonably believe that he [or another] was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety.

*Commonwealth v. Hammond*, 953 A.2d 544, 559 (Pa.Super. 2008), *appeal denied*, 600 Pa. 743, 964 A.2d 894 (2009) (quoting *McClendon, supra* at 1230). The Commonwealth must establish only one of these three elements beyond a reasonable doubt to insulate its case from a self-defense or defense of others challenge to the evidence. *Commonwealth v. Burns*, 765 A.2d 1144, 1149 (Pa.Super. 2000), *appeal denied*, 566 Pa. 657, 782 A.2d 542 (2001). The Commonwealth can negate a self-defense or defense of others claim if it proves the defendant did not reasonably believe he was in imminent danger of death or great bodily injury and it was necessary to use deadly force to save himself or another from that danger. *Commonwealth v. Sepulveda*, 618 Pa. 262, 289, 55 A.3d 1108, 1124 (2012).

> The requirement of reasonable belief encompasses two aspects, one subjective and one objective. First, the defendant must have acted out of an honest, bona fide belief that he [or another] was in imminent danger, which involves consideration of the defendant's subjective state of mind. Second, the defendant's belief that he needed to defend himself [or another] with deadly force, if it existed, must be reasonable in light of the facts as they appeared to the defendant, a consideration that involves an objective analysis.

*Commonwealth v. Mouzon*, 617 Pa. 527, 551, 53 A.3d 738, 752 (2012). The use of deadly force itself cannot be viewed in isolation with the victim as

the sole physical aggressor and the defendant acting in responsive self-defense. *Id.* at 549, 53 A.3d at 751. "[T]his [would be] an incomplete and inaccurate view of the circumstances for self-defense [or defense of others] purposes." *Id.* To claim self-defense or defense of others, the defendant must be free from fault in provoking **or escalating** the altercation that led to the offense, before the defendant can be excused from using deadly force. *Id.* (emphasis added). Likewise, the Commonwealth can negate a self-defense or defense of others claim by proving the defendant "used greater force than was reasonably necessary to protect against death or serious bodily injury." *Commonwealth v. Truong*, 36 A.3d 592, 599 (Pa.Super. 2012) (*en banc*), *appeal denied*, 618 Pa. 688, 57 A.3d 70 (2012).

When the defendant's own testimony is the only evidence of self-defense or defense of others, the Commonwealth must still disprove the asserted justification and cannot simply rely on the jury's disbelief of the defendant's testimony. *Commonwealth v. Reynolds*, 835 A.2d 720, 731 (Pa.Super. 2003). If there are other witnesses, however, who provide accounts of the material facts, it is up to the fact finder to "reject or accept all, part or none of the testimony of any witness." *Commonwealth v. Gonzales*, 609 A.2d 1368, 1370 (Pa.Super. 1992). "Although the Commonwealth is required to disprove a claim of self-defense [or defense of others] arising from any source beyond a reasonable doubt, a [fact-finder] is not required to believe the testimony of the defendant who raises the claim."

*Commonwealth v. Bullock*, 948 A.2d 818, 824 (Pa.Super. 2008), *appeal denied*, 600 Pa. 773, 968 A.2d 1280 (2009).

"A number of factors, including whether complainant was armed, any actual physical contact, size and strength disparities between the parties, prior dealings between the parties, threatening or menacing actions on the part of complainant, and general circumstances surrounding the incident, are all relevant when determining the reasonableness of a defendant's belief that the use of deadly force was necessary to protect against death or serious bodily injuries." *Commonwealth v. Smith*, 97 A.3d 782, 788 (Pa.Super. 2014). "No single factor is dispositive." *Id.*

"A defense of 'imperfect self-defense' exists where the defendant actually, but unreasonably, believed that deadly force was necessary." *Truong, supra* at 599 (Pa.Super. 2013). *See also* 18 Pa.C.S.A. § 2503(b). This defense is available only "where a defendant held an unreasonable rather than a reasonable belief that deadly force was required to save [his or her] life, and all other principles of justification under [Section 505] have been met." *Commonwealth v. Sanchez*, 623 Pa. 253, 314, 82 A.3d 943, 980 (2013), *cert. denied*, ___ U.S. ___, 135 S.Ct. 154, 190 L.Ed.2d 113 (2014). A successful "imperfect self-defense" claim will result in a voluntary manslaughter conviction despite the fact that the actor intentionally or knowingly killed the victim. 18 Pa.C.S.A. § 2503(b).

Instantly, Appellant took Victim to a cabin owned by the Brewer family

in the early morning hours of August 14, 2012. After dropping Victim off, Appellant returned to Daisytown where he and Mrs. Roe went to Victim's home and started removing items Victim had allegedly stolen from them. Appellant and Mrs. Roe then drove Mrs. Roe's Jeep out to the cabin. While on the way to the cabin, Appellant and Mrs. Roe stopped at a True Value hardware store and purchased a 12-gauge shotgun as well as buckshot and birdshot ammunition. Appellant and Mrs. Roe stopped again on the way to the cabin near Blacksville pond, and Appellant test fired the shotgun into the trees on the side of the road. When Appellant and Mrs. Roe reached the cabin, Appellant told Mrs. Roe to go inside and get Victim. Mrs. Roe complied and as she returned from the cabin with Victim behind her, Appellant shot Mrs. Roe in the face. Victim turned around and ran back into the cabin, while Mrs. Roe ran to her Jeep and drove away. Appellant chased Victim into the cabin and fatally shot Victim in the arm and neck. Appellant then fled to a relative's house, obtained a white van, and drove to West Virginia.

At Appellant's trial, the Commonwealth presented the testimony of Corporal Tobin concerning statements Appellant made to police immediately following his arrest. According to Corporal Tobin, Appellant claimed to have shot Victim in self-defense or defense of Mrs. Roe; however, Appellant admitted he did not see any weapon or other item in Victim's hands prior to the shooting. Mrs. Roe also testified at trial and corroborated Appellant's

initial statement to police that Victim did not have any weapons or other items in his hands when he exited the cabin. Further, the Commonwealth presented the testimony of numerous police officers who processed the crime scene, which established that police did not find a firearm on Victim's person or in the cabin.

Appellant testified on his own behalf at trial and largely corroborated the Commonwealth's version of events leading up to the shooting. Appellant, however, claimed Victim charged at Mrs. Roe when he exited the cabin. Appellant also stated he saw a flash as Victim approached Mrs. Roe. Appellant further alleged he heard additional gunshots not fired from his shotgun as Victim retreated into the cabin and Mrs. Roe fled the scene in the Jeep. Appellant indicated he feared for his safety, so he continued to fire at Victim even after Victim retreated into the cabin.

The evidence presented by the Commonwealth at trial established that Appellant used deadly force on Victim despite the fact that Victim did not actually possess a handgun or initiate the altercation. Thus, the circumstances failed to justify Appellant's use of deadly force. **See Harris, supra**. Additionally, Appellant continued to use deadly force without provocation after Mrs. Roe fled the scene and Victim retreated into the cabin. **See Hammond, supra**. Further, the Commonwealth provided substantial evidence for the jury to conclude that Appellant planned the shooting prior to his arrival at the cabin, including Appellant's purchase of a

shotgun on the way to the cabin, and Appellant's test-firing of the shot-gun prior to his arrival at the cabin. Thus, the Commonwealth produced sufficient evidence to disprove beyond a reasonable doubt that Appellant acted in self-defense or defense of Ms. Roe, and Appellant's first issue on appeal merits no relief. **See Barnswell Jones, supra**.

In his second issue, Appellant argues the Commonwealth displayed seven autopsy photos of Victim's injuries to the jury that were highly inflammatory and prejudicial. Appellant claims the court excluded some of these photographs in response to an objection by defense counsel, yet the Commonwealth displayed these excluded photographs to the jury anyway. Appellant avers it was unnecessary for the jury to see any of these autopsy photos because the cause and manner of Victim's death was not in dispute at trial and Dr. Wecht provided extensive testimony about Victim's injuries. Appellant concludes the court's decision to allow the Commonwealth's introduction of these seven autopsy photographs was a gross abuse of discretion, and this Court should vacate Appellant's conviction. We disagree.

"The admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." **Commonwealth v. Mitchell**, 588 Pa. 19, 56, 902 A.2d 430, 452 (2006), *cert. denied*, 549 U.S. 1169, 127 S.Ct. 1126, 166 L.Ed.2d 897 (2007). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or

misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will…discretion is abused." *Commonwealth v. Chamberlain*, 612 Pa. 107, 175-76, 30 A.3d 381, 422 (2011), *cert. denied*, ___ U.S. ___, 132 S.Ct. 2377, 182 L.Ed.2d 1017 (2012).

"Evidence is relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Commonwealth v. Sanchez*, 614 Pa. 1, 42, 36 A.3d 24, 48-49 (2011), *cert. denied*, ___ U.S. ___, 133 S.Ct. 122, 184 L.Ed.2d 58 (2012). Importantly, "[a] court may exclude relevant evidence if its probative value is outweighed by the danger of one or more of the following: unfair prejudice, confusing of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. When the Commonwealth seeks to introduce into evidence photographs of a homicide victim, the trial court must engage in a two-part analysis:

> [The trial] court must [first] determine whether the photograph is inflammatory. If not, it may be admitted if it has relevance and can assist the jury's understanding of the facts. If the photograph is inflammatory, the trial court must decide whether…the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors.

*Commonwealth v. Murray*, 623 Pa. 506, 537, 83 A.3d 137, 156 (2013). "Photographic images of a homicide victim are often relevant to the intent

- 18 -

element of first-degree murder." ***Commonwealth v. Watkins***, \_\_\_ Pa. \_\_\_, \_\_\_, 108 A.3d 692, 724 (2014), *cert. denied*, \_\_\_ U.S. \_\_\_, 136 S.Ct. 221, 193 L.Ed.2d 167 (2015). "The mere fact that a medical examiner testified to the nature of the victim's injuries and the cause of death does not render photographs of the victim duplicative." ***Id.*** Significantly, the failure to object to the admission of evidence at trial results in waiver of that issue on appeal. ***Commonwealth v. Benson***, 421 A.2d 383, 389 (Pa.Super. 1980); Pa.R.A.P. 302(a).

Instantly, prior to the testimony of Trooper Porter and Dr. Wecht, Appellant's counsel objected to the Commonwealth's introduction of eight autopsy photographs of Victim's injuries. Specifically, Appellant's counsel objected to photographs 103, 140, 147, 149, 154, 173, 198, and 209. Appellant's counsel argued these autopsy photos, especially the photographs of Victim's neck injury, were highly inflammatory and prejudicial. After a side-bar discussion with Appellant's attorney, Mrs. Roe's attorney, and the Commonwealth's attorney, the court agreed to exclude photographs 103, 140, 154, and 173, which involved the images of Victim's neck injury. The court, however, allowed the Commonwealth to introduce photographs 147, 149, 198, and 209. When testimony resumed, the Commonwealth introduced autopsy photographs 115, 130, 135-139, 147, 149, 156, 158, 198, 207, and 209 during the testimony of Trooper Porter and Dr. Wecht. The other photographs displayed to the jury by the Commonwealth were not

the subject of any defense objection either in the side-bar discussion or at the time of introduction.

Appellant now seeks to challenge the court's admission of introduction of autopsy photograph 115, 135, 136, 137, 147, 149, and 209. Initially, with respect to Appellant's claim that the court allowed the Commonwealth to introduce photographs 103, 140, 154, and 173 despite their exclusion, the record belies Appellant's contention. The Commonwealth did not introduce any of these photographs at any time during trial. Additionally, none of the autopsy photographs introduced by the Commonwealth displayed Victim's neck injury. Next, to the extent Appellant seeks to challenge the introduction of photographs 115, 135, 136 and 137, Appellant failed to object to the Commonwealth's introduction of these images at trial. The failure to challenge the court's admission of these photographs at the time of trial constitutes waiver of all claims regarding their admissibility. *See Benson, supra*. Finally, with respect to photographs 147, 149, and 209, Appellant's challenge to the admission of these photographs is properly before us because Appellant's counsel timely objected to the introduction of these images at trial. *See id.*; Pa.R.A.P. 302(a). Nevertheless, the trial court decided to admit these photos only after an extensive side-bar discussion with counsel and review of case law. Additionally, while the court allowed these three photographs, the court did exclude four other photographs that were the subject of a defense objection, due to their

inflammatory nature. The court ultimately allowed the Commonwealth to introduce photographs 147, 149, and 209 because these images helped establish that Appellant shot Victim at close-range and with intent to kill. **See Watkins, supra**. Thus, these photographs were highly relevant to the Commonwealth's disproval of Appellant's justification claims. Further, the introduction of these photographs was not duplicative even though Dr. Wecht testified to the extent of Victim's injuries. **See id.** Therefore, the court properly allowed the Commonwealth to introduce these autopsy photographs, and Appellant's second issue merits no relief. **See Mitchell, supra**.

In his third issue on appeal, Appellant argues that this Court's March 9, 2015 order directed the trial court to provide Appellant with all the necessary materials to prosecute this appeal. Appellant also maintains that this Court's September 15, 2015 order directed the trial court to dispose of all pending motions to supplement the record and compel the production of specified transcripts. Appellant claims the trial court has not complied with either the March 9, 2015 order or the September 15, 2015 order. Appellant avers the trial court's lack of compliance with these orders has deprived Appellant of all the necessary materials needed for this appeal, including pre-trial pleadings, transcripts, and trial exhibits. Appellant concludes the trial court's failure to comply with this Court's directives prevented Appellant's ability to exercise his constitutional right to meaningful appellate

review, and this Court should remand for a new trial. We disagree.

With respect to a claim that an incomplete record has interfered with a defendant's right to meaningful appellate review, this Court has stated:

> [T]o assure that a defendant's right to appeal will not be an empty, illusory right, [this Court] requires that he…be furnished a full transcript or other equivalent picture of the trial proceedings. Meaningful appellate review is otherwise an impossibility, and fairness dictates that a new trial be granted.

**Commonwealth v. Lyons**, 500 A.2d 102, 105 (Pa.Super. 1985). "With this in mind, it is settled law that in order for a defendant to establish entitlement to relief based on the incompleteness of the trial record, he must first make some potentially meritorious challenge which cannot be adequately reviewed due to the deficiency in the [record]." **Commonwealth v. Paxton**, 821 A.2d 594, 596 (Pa.Super. 2003), *appeal denied*, 577 Pa. 715, 847 A.2d 1282 (2004).

Instantly, in his appellate brief, Appellant vaguely asserts the trial court has not provided him with all necessary materials, including pre-trial pleadings, transcripts, and trial exhibits. Appellant, however, fails to identify which specific documents are missing from the certified record, which are necessary for his appeal. Additionally, Appellant does not explain how the trial court's alleged failure to comply with the orders of this Court interfered with his right to meaningful appellate review. Further, Appellant does not raise any potentially meritorious challenge that this Court is unable to review adequately, due to the alleged deficiency in the record. **See id.** In fact, all

- 22 -

transcripts and trial exhibits, including Victim's autopsy photographs, necessary to address Appellant's claims on appeal are contained in the certified record. Therefore, the trial court's alleged failure to comply with the orders of this Court has not hindered Appellant's right to meaningful appellate review, and Appellant's third issue merits no relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/30/2016